USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1261 UNITED STATES, Appellee, v. PILAR BELARDO-QUI ONES, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen Consuelo Cerezo, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Lynch, Circuit Judge, _____________ and Watson,* Judge. _____ _____________________ Rafael F. Castro-Lang for appellant. _____________________ Jos A. Quiles-Espinosa, Senior Litigation Counsel, with _________________________ whom Guillermo Gil, Acting United States Attorney, and Nelson _____________ ______ P rez-Sosa, Assistant United States Attorney, were on brief for __________ appellee. ____________________ December 13, 1995 ____________________  ____________________ * Of the United States Court of International Trade, sitting by designation. WATSON, Senior Judge. Appellant has challenged his WATSON Senior Judge ____________ conviction for conspiracy to import marijuana in violation of 21 USC 592 and 963. Appellant claims that it was error for the trial court to deny a motion for a bill of particulars, to deny a mistrial after prejudicial testimony, to allow hearsay testimony linking a telephone number used in the conspiracy to appellant's fish market, to deny his Rule 29 motion for acquittal, and finally, to increase his sentencing Guideline level for having a managerial role in the crime. For the following reasons, Appellant's claims are found to be without merit. Denial of the Bill of Particulars Denial of the Bill of Particulars Appellant was named in Count One of the Indictment. That count described a conspiracy that began on or about October 26, 1991 with the object of importing marijuana from Colombia and ended on November 6, 1991 when the conspirators found out that the boat for which they had been searching had been seized by Venezuelan authorities. Appellant was described as joining the conspiracy on November 2, 1991, when, in a meeting at his fish store, he agreed to supply the boat and crew needed to meet the Colombian boat at a point ten to fifteen miles off the coast of St. Croix, U.S. Virgin Islands. Count I of the indictment ends with an allegation that one of the conspirators made some calls on November 6, 1991, after which he announced to the others that the boat had been seized by Venezuelan authorities. He then -2- called St. Croix to have the others return to Puerto Rico. Appellant claims that it was error for the District Court to deny his bill of particulars asking for the date on which the Colombian boat was seized by the Venezuelan authorities. According to Appellant that information would have allowed him to present a defense that, for him, the crime of conspiracy to import marijuana had become impossible to achieve because the boat was seized prior to November 2, 1991, before he was alleged to have met with the other conspirators.  According to Appellant, the anticipated delivery date of November 4th means that the boat had to leave Colombia four to five days earlier, in which case its seizure by Venezuelan authorities had to take place before appellant's first contact with the other conspirators at 5:00 P.M. on November 2d. The government has defended the denial of the bill of particulars on the grounds that the indictment provided sufficient information, that the government did not have the seizure information, that it provided full discovery in any event, and that if the seizure did indeed take place prior to November 2d, the conspirators would most likely have found out about it quickly and would not have continued their efforts to meet the Colombian boat. The government suggests that the seizure took place after the rendezvous failed. The government also asserts that the defendant was not prejudiced by the lack of the information.  To begin with, the denial of a bill of particulars is -3- reversible error only if it is a clear abuse of discretion that causes actual prejudice to a defendant's substantial rights. United States v. Hallock, 941 F.2d 36, 40 (1st Cir. 1991). This _____________ _______ indictment contained more than enough information to allow defendant to prepare his defense. In fact, it is prolix compared to the indictment under discussion in United States v. Paiva, 892 _____________ _____ F.2d 148 (1st Cir. 1989), which did not contain any precise time period for the conspiracy and did not even specify the date on which the defendant joined it. Nevertheless this Court held that the temporal specifications of "early 1983" and "the fall of 1983" were sufficient to allow the preparation of a defense without a bill of particulars. A fortiori the temporal details __________ in this indictment were sufficient to allow the defendant to present a defense that the conspiracy had ended before he came into the picture. It is noteworthy that the record shows no attempt by defendant to pursue alternative means of obtaining information about the date of the boat seizure.  Even if we go past the correctness of denying the elaboration of an adequate indictment, there is another insurmountable obstacle to the request for information about the date of seizure. Denial of this bill of particulars as to the time and location of the seizure could not possibly be an abuse of discretion because it could not be the basis of a legal defense to the charge of conspiracy. It has been held that "... a culpable conspiracy may exist even though, because of the -4- misapprehension of the conspirators as to certain facts, the substantive crime which is the object of the conspiracy may be impossible to commit." United States v. Waldron, 590 F.2d 33, 34 _____________ _______ (1st Cir. 1979). In that case the conspirators thought that they were working to import and sell valuable stolen paintings. In reality, the only painting they delivered to Boston was a forgery worth less than the $5000 minimum of the provision making it unlawful to knowingly sell stolen goods. Appellant's argument resembles the one made by appellants in United States v. Giry, 818 F.2d 120 (1st Cir. 1987) _____________ ____ that because the persons who were to import the cocaine were agents of the Drug Enforcement Agency [DEA] the importation could never actually occur. The court rejected "... the faulty assumption that an expressed conspiratorial objective is negated by its factual impossibility." 818 F.2d at 126. Here appellant joined in a conspiracy and performed an essential role in obtaining a boat and crew needed to accomplish the crime. Even if intervening events had made the accomplishment of the criminal purpose impossible all the elements of a criminal conspiracy were present. There is no basis for making a distinction between those who start a conspiracy that is impossible from the beginning and one who joins in a conspiracy that has become impossible due to intervening events unknown to the conspirators. Appellant has cited three cases for the proposition that a conspiracy ends when its purpose is thwarted, United ______ States v. Roshko, 969 F.2d 1, 8 (2d Cir. 1992); United States v. ______ ______ _____________ -5- Serrano, 870 F.2d 1, 8 (1st Cir. 1989); and Krulewitch v. United _______ __________ ______ States, 336 U.S. 440, 443-44 (1949). This proposition can only ______ be true if the conduct of the conspirators is no longer directed towards accomplishment of the goal of the conspiracy, impossible or not. In the cases cited by appellant it was held that the conspiracy had ended either because its goal had been reached or because the conspirators had given up. There was no continuation of acts designed to further the conspiracy. In United States v. Roshko, 969 F.2d 1, 8 (2d Cir. _____________ ______ 1992), appellant's conspiracy was held to have ended successfully when he obtained a green card by means of a sham marriage to a first "wife." The government, seeking to justify indicting him after the five year statute of limitations had run on that crime, had argued that the conspiracy continued through the later points in time when he divorced that first wife and married another woman. The court held that it was the obtaining of a green card that was the object of the conspiracy and the conspiracy terminated when that was accomplished. In United States v. Serrano, 870 F.2d 1, 8 (1st Cir. _____________ _______ 1989) and Krulewitch v. United States, 336 U.S. 440, 443-44 __________ _____________ (1949) the issue of the duration of a conspiracy arose in the context of whether statements should have been admitted into evidence against defendants under the coconspirator exception to the hearsay rule. The statements in question were held inadmissible because they were made long after the collapse of the conspiracy in the case of Serrano and after the end of the _______ -6- conspiracy, successful or not, in Krulewitch.  __________ It is apparent that these cases do not support a proposition that conspiracies end because of impossibility when the conspirators are continuing to actively pursue the original criminal goal. Denial of the Rule 29 Motion for Acquittal Denial of the Rule 29 Motion for Acquittal At trial the defendant's argument in favor of his Rule 29 motion was that the evidence, viewed in the light most favorable to the government, showed only that he was doing a favor for friends and lacked criminal intent. The record makes it plain that there was more than enough evidence from which a rational trier of fact could have found beyond a reasonable doubt that the Appellant was engaged in a conspiracy to import marijuana and had the active role of supplying the boat and crew needed to import the marijuana. Having asserted specific grounds for that motion, other grounds such as the impossibility argument discussed above cannot be raised on appeal. See United States v. ___ _____________ Dandy, 998 F.2d 1344, 1357 (6th Cir. 1993), cert. denied, 115 S. _____ _____ ______ Ct. 1188 (1994). In any event, that line of argument would be to no avail in light of the conclusion reached above that an unknown impossibility does not end a conspiracy.  Denial of a mistrial for prejudicial testimony Denial of a mistrial for prejudicial testimony -7- During cross examination about his past crimes a prosecution witness, Sergio Monteagudo, was asked where a prior drug crime had occurred. He replied "Your client can recall because I gave him 1,000 dollars at that time." Defendant moved for a mistrial. The court denied the motion and gave a curative instruction to the jury.  This was certainly an inappropriate and potentially prejudicial answer. However, within the context of the events at the trial it was not likely to affect the outcome and interfere with the jury's ability to make an impartial determination of the facts. The factors leading to this conclusion are those set out in United States v. Manning, 23 F.3d 570, 574 (1st Cir. 1994), _____________ _______ the severity of the cause, the surrounding context, the likely effect of a curative instruction, and the strength of the evidence against the defendant. In this case all these factors militated against a mistrial. Although the summary of the offensive testimony above gives it a certain clarity, it was not as clear in the actual sequence of testimony. There it appears that counsel for defendant was probing about a drug crime prior to the one on trial and could not elicit an exact date for it. Then he asked "where did this happen?" and the response implicating his client was given. Although the implication is that the payment to defendant was connected to that prior crime it is not a clear or graphic description of defendant's involvement.  In any event, the trial judge immediately gave the jury -8- a thorough and forceful curative instruction. There is no reason to believe that this episode interfered with the jury's ability to reach an impartial verdict. When this is considered together with the strong evidence of appellant's guilt developed elsewhere at trial it is plain that the trial judge did not abuse her discretion in denying the motion for mistrial. Admission of hearsay testimony as to location of a telephone Admission of hearsay testimony as to location of a telephone number number The government wanted to connect Appellant, the owner of El Relincho fish market, to telephone calls made from telephone number 863-3318 in Fajardo, Puerto Rico, to the hotel in St. Croix that was being used by the conspirators who were searching for the Colombian boat. To that end Jos A. Morales, the DEA case agent for this case was asked whether he had determined the number of El Relincho fish market. He gave the number 863-3318. Later, on cross examination, it was brought out that in the telephone company records that number is listed only as being invoiced to a Julia Amparo G mez at a General Delivery address in Puerto Rural, Puerto Rico. On redirect examination no connection was made between that person and the Appellant or El Relincho fish market. Over a hearsay objection, Morales was allowed to testify that on two occasions he had called the number in question and had been told by a person on the other end that he had reached El Relincho fish market.  -9- The linking of the telephone number in question and Appellant's fish market was first made in testimony to which no objection was made. The admission of that testimony was not plain error. The later testimony, based on what the agent was told when he dialed that number, was inadmissible hearsay and should not have been allowed in evidence. The admission of that testimony was harmless error. In neither instance was the evidence concerning the telephone number important in light of the abundance of other evidence linking the Appellant and his fishmarket to the activity of the conspiracy. This is not an instance where the error would cause a "miscarriage of justice" or cause the "fundamental fairness or basic integrity of the proceedings" to be skewed in a major respect. See United States ___ _____________ v. Taylor, 54 F.3d 967, 973 (1st Cir. 1995). ______ Imposition of an increase in Sentencing Guideline level Imposition of an increase in Sentencing Guideline level Appellant argues that he came into the conspiracy at a late stage and did not have a true managerial role. Accordingly, he asserts that it was error for the sentencing Judge to make an upward adjustment of 3 points in his guideline level. Appellant argues that he should have received a 2 point decrease for being a minor participant in the conspiracy. This contention has no merit. There is no clear error in the sentencing judge's imposition of an increase for managerial participation. The recruiting, supplying, and -10- instructing of those who are to perform an essential mission of picking up marijuana at sea plainly indicates a managerial role. It has been held that "'[e]fforts to marshall other individuals for the purpose of executing the crime' are enough to demonstrate sufficient control over a participant for the purposes of  3B1.1." United States v. Sax, 39 F.3d 1380 (7th Cir. 1994) ______________ ___ (quoting United States v. Carson, 9 F.3d 576, 585 (7th Cir. ______________ ______ 1993). Accordingly, it was not erroneous for the sentencing judge to make an upward adjustment of 3 points under 3B1.1 of the Sentencing Guidelines. See United States v. Vargas, 16 F.3d _____________ ______ 155, 160 (7th Cir. 1994). Affirmed. ________ -11-