USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________
 
 
No. 97-1630

 UNITED STATES OF AMERICA,
 
 Appellee,
 
 v.
 
 LAWRENCE J. ROMANO,
 
 Appellant.
 
 ____________________
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS
 
 [Hon. Michael A. Ponsor, U.S. District Judge]
 
 ____________________
 
 Before
 
 Stahl, Circuit Judge,
 Cyr, Senior Circuit Judge,
 and Lynch, Circuit Judge.
 
 ____________________
 
 Wendy Sibbison with whom Michael O. Jennings was on brief for
appellant.
 Nadine Pellegrini, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for appellee.

 ____________________
 
 March 9, 1998
 ____________________
 STAHL, Circuit Judge. The felony proviso of the
 Lacey Act, 16 U.S.C. 3373(d)(1), outlaws the purchase of
 wildlife (of a specified market value) the purchaser knows weretaken -- i.e., captured, killed, or collected -- in violation
 of state law. This appeal presents occasion for us to decide
 an issue of apparent first impression: whether the same
 proviso also criminalizes the purchase of lawful guiding and
 outfitting services to facilitate a taking of wildlife (again,
 of a specified market value) that, if effectuated, would be in
 violation of state law. We conclude that the language of 16
 U.S.C. 3373(d) does not encompass such conduct and, for
 reasons we shall explain, reverse the convictions before us.
 I.
 A. The Facts
 Between 1989 and 1994, defendant-appellant Lawrence
 J. Romano made annual trips from his home in Massachusetts to
 Alaska for guided and outfitted big game hunting expeditions. 
 On these trips, Romano killed a brown bear and a number of Dall
 sheep, moose, and caribou. Subsequently, he shipped the
 animals out of state for mounting. Unbeknownst to his guides
 and outfitters, Romano obtained resident hunting licenses prior
 to his hunts by falsely representing on his license
 applications that he resided in Anchorage. As a result of his
 misrepresentations, Romano saved nearly ten thousand dollars in
 non-resident licensing fees and non-resident "big game locking
 tags," which non-resident hunters must affix to slain animals
 prior to shipping.
 Alaska Stat. 16.05.330(a)(2) prohibits the taking
 of wildlife without the appropriate Alaska hunting license. 
 Alaska Stat. 16.05.420(a) voids a hunting license obtained by
 means of a false statement of material fact. Alaska Stat. 
 16.05.420(b) provides that a false statement of material fact
 on a hunting license application is a misdemeanor. And Alaska
 Stat. 16.05.430(a) provides that the taking of an animal
 without a proper hunting license is a misdemeanor. Thus,
 Romano's false representations (besides themselves being
 misdemeanors) invalidated each of his hunting licenses, making
 his kills unlawful under Alaska Stat. 16.05.430 (a). In all
 other respects, though, Romano's hunts were legal; proper non-
 resident licenses and tags would have permitted him to take and
 ship the exact same game that he took under authority of the
 fraudulently-obtained resident licenses.
 B. The Statute
 This case puts in issue the proper construction of
 three interrelated provisions of the Lacey Act -- two dating to
 the Act's 1981 amendment and one to its 1988 amendment. 
 The first, 16 U.S.C. 3372(a)(2), is a general
 prohibitory provision. It establishes the universe of conduct
 which may give rise to civil and criminal liability under the
 Act. Insofar as is relevant here, it provides: "It is
 unlawful for any person . . . to import, export, transport,
 sell, receive, acquire, or purchase in interstate or foreign
 commerce . . . any . . . wildlife taken, possessed,
 transported, or sold in violation of any law or regulation of
 any State . . . ." 16 U.S.C. 3372(a)(2)(A). 
 
 The second provision, 16 U.S.C. 3372(c), was added
 in 1988 to "overturn" United States v. Stenberg, 803 F.2d 422
 (9th Cir. 1986). See S. Rep. 100-563, at 9-10 (1988),
 reprinted in 1988 U.S.C.C.A.N. 5366, 5374-75. In Stenberg, the
 Ninth Circuit had expressed the common sense view that the
 selling of guiding services to facilitate what both guide and
 hunter knew would be an illegal taking of wildlife does not
 itself constitute a "sale of wildlife" in violation of the Act. 
 See 803 F.2d at 435-37. Section 3372(c) effectively abrogates
 Stenberg by providing specialized definitions of the terms
 "sale" and "purchase" to be applied throughout the Act. In
 pertinent part, the provision reads: "It is deemed to be a
 purchase of . . . wildlife in violation of this chapter for a
 person to obtain for money or other consideration . . .
 guiding, outfitting, or other services . . . for the illegal
 taking, acquiring, receiving, transporting, or possessing of
 . . . wildlife." 16 U.S.C. 3372(c)(2)(A).
 The third and most relevant provision for present
 purposes is 16 U.S.C. 3373(d). Although the provision bears
 the caption "Criminal penalties," it does not simply prescribe
 punishment for conduct described elsewhere in the Act. 
 Instead, the provision effectively sets forth the substantive
 elements of the Act's criminal offenses by defining, and
 attaching criminal consequences to, a subset of the "unlawful"
 conduct described in 16 U.S.C. 3372.
 16 U.S.C. 3373(d) has both felony and misdemeanor
 provisos. In pertinent part, its felony proviso states: 
 Any person who . . . violates any
 provision of this chapter . . . by
 knowingly engaging in conduct that
 involves the sale or purchase of, the
 offer of sale or purchase of, or the
 intent to sell or purchase, fish or
 wildlife . . . with a market value in
 excess of $350, knowing that the fish or
 wildlife . . . were taken, possessed,
 transported, or sold in violation of, or
 in a manner unlawful under, any underlying
 law, treaty or regulation, shall be fined
 not more than $20,000, or imprisoned for
 not more than five years, or both.
 
 16 U.S.C. 3373(d)(1). In pertinent part, its misdemeanor
 proviso states:
 Any person who knowingly engages in
 conduct prohibited by any provision of
 this chapter . . . and in the exercise of
 due care should know that the . . .
 wildlife . . . were taken, possessed,
 transported, or sold in violation of, or
 in a manner unlawful under, any underlying
 law, treaty or regulation shall be fined
 not more than $10,000, or imprisoned for
 not more than one year, or both.
 
 16 U.S.C. 3373(d)(2).
 C. The Prior Proceedings
 In early 1995, agents of the United States Fish and
 Wildlife Service conducted two searches of Romano's home. 
 These searches yielded inculpatory evidence including Romano's
 hunting diaries and travel itineraries, videotapes and
 photographs of the Alaska hunts, documents establishing
 Romano's Massachusetts residency, shipping tags for the animals
 in question, and mounted trophies of animals killed during the
 hunts. In July 1995, a federal grand jury returned an eight
 count indictment against Romano.
 Count VIII sought forfeiture of the trophies pursuant
 to the Lacey Act's forfeiture provision, 16 U.S.C. 3374;
 Counts I-VII, each of which was captioned "Interstate Sale and
 Transport of Wildlife Taken in Violation of State Law, 16
 U.S.C. 3372(a)(2)(A)" and pertained to separate kills and
 shipments, charged him with feloniously violating the Lacey Act
 by
 knowingly engag[ing] in conduct involving
 the sale and purchase, offer to sell and
 purchase, and intent to sell and purchase,
 wildlife having a market value in excess
 of $350 . . . by knowingly transporting,
 receiving, acquiring and purchasing said
 wildlife in interstate commerce . . .
 knowing said wildlife had been taken,
 possessed and transported in violation of
 and in a manner unlawful under Alaskan
 state law, specifically Alaska Statute 
 16.05.330(a)(2), which prohibits the
 taking of wildlife without the appropriate
 Alaska hunting license.
 
 (emphasis supplied). With the exception of the underlined
 phrase, this charging language loosely tracked the language of
 the Act's felony proviso -- 16 U.S.C. 3373(d)(1). The
 underlined phrase, on the other hand, appears to have been
 imported from 16 U.S.C. 3372(a)(2). The government has not
 explained, and we cannot comprehend, why the charging language
 was so structured.
 In any event, it is important to understand that
 Romano never engaged in a direct sale or purchase of wildlife. 
 Nor, despite the hint to the contrary in the indictment's
 charging language, has the government taken the position that
 Romano's acts of transporting the animals he killed were
 conduct involving the sale or purchase of wildlife. Rather,
 the government's case might best be described as resting on a
 theory of constructive purchase of wildlife. That theory
 depends, in turn, on the express language of 16 U.S.C. 
 3372(c)(2), by operation of which (as set forth above) "a
 purchase of . . . services . . . for the illegal taking . . .
 of . . . wildlife" is "deemed to be a purchase of . . .
 wildlife in violation of [the Lacey Act]." In other words,
 this case has proceeded on the premise that Romano's annual
 purchases of guiding and outfitting services to assist him in
 prospective unlawful takings of wildlife were the "conduct that
 involves the . . . purchase of . . . wildlife" made felonious
 by 16 U.S.C. 3373(d)(1). See 13 of the indictment's
 "Introductory Allegations" ("Each year between 1989 and 1994
 the defendant LAWRENCE J. ROMANO purchased wildlife in
 interstate commerce by paying for the services of professional
 Alaskan guides to assist him in taking game in Alaska.").
 In January 1996, Romano moved to dismiss all eight
 counts of the indictment. He asserted a number of arguments in
 support of his motion, all of which were variations on a five-
 part theme: (1) the Lacey Act cannot be read to apply to his
 conduct because the guiding and outfitting services he
 purchased were wholly lawful; (2) because the relevant
 statutory language is, at best, ambiguous, both the rule of
 lenity and the Act's legislative history (which Romano reads to
 suggest that the Act is not intended to reach the activities of
 private, recreational hunters who do not engage in unlawful
 commercial activity) preclude its application to his conduct;
 (3) Alaska's disparate treatment of resident and out-of-state
 hunters is unconstitutional; (4) Congress does not have the
 power to regulate the non-commercial, intrastate activities of
 private, recreational hunters; and (5) the statute of
 limitations had run on the killing and shipment at issue in
 Count I. Perhaps because of the captions the government gave
 to Counts I-VII of the indictment, Romano's first and second
 arguments focused almost exclusively on the language of 16
 U.S.C. 3372(a)(2) and (c)(2); they did not address the more
 pertinent language of 16 U.S.C. 3373(d)(1)(B).
 The district court agreed with Romano's statute of
 limitations argument but otherwise denied the motion and sent
 the case to a jury. See generally United States v. Romano, 929
 F. Supp. 502 (D. Mass. 1996). The government did not seek to
 make an alternative argument that, even if Romano did not
 violate the Act's felony proviso, he violated its misdemeanor
 proviso; nor did Romano seek a lesser included instruction. 
 Accordingly, the case was tried solely under the theory that
 Romano's purchases of guiding and outfitting services for the
 illegal taking of wildlife were felonies. At the conclusion of
 the government's case, the closing of the evidence, and after
 the jury's guilty verdicts on Counts II-VII, Romano renewed his
 first, second, and fourth arguments as challenges to the
 sufficiency of the evidence. He also asserted that, because
 the government had not introduced evidence from which a jury
 could find beyond a reasonable doubt that the animals in
 question had "market value[s] in excess of $350," 16 U.S.C. 
 3373(d)(1)(B), he should be acquitted. The district court
 stood by its earlier rulings and rejected Romano's market value
 argument, reasoning that the thousands of dollars Romano paid
 for guiding and outfitting services constituted evidence from
 which the jury could properly infer that the animals killed
 during the hunts had market values in excess of $350. 
 Subsequently, the court sentenced Romano to two years'
 probation. It also fined him $20,000, ordered him to make
 restitution in the amount of $9,994 to the State of Alaska, and
 entered a judgment forfeiting the trophies that were the
 subject of Count VIII. The court stayed execution of the
 sentence pending appeal.
 II.
 Proper resolution of this appeal is not without
 difficulty. On the one hand, Romano's specific appellate
 arguments (which essentially mirror those presented to the
 district court during and after the trial) are not particularly
 persuasive. Only the market value argument gives us
 significant pause; yet even a ruling that the government failed
 to establish that the animals Romano killed had market values
 in excess of $350 raises a potentially difficult question not
 addressed in the briefs: Should we reverse the convictions
 outright or, despite the lack of either a misdemeanor offense
 instruction below or a request by the government that we do so,
 invoke our authority under 28 U.S.C. 2106 to remand with
 instructions that the district court enter judgments against
 Romano under the Act's misdemeanor proviso? See Rutledge v.
 United States, 116 S. Ct. 1241, 1250 (1996) (noting the Court's
 prior approval of the "uniform" conclusion of federal appellate
 courts "that they may direct the entry of judgment for a lesser
 included offense when a conviction for a greater offense is
 reversed on grounds that affect only the greater offense");
 United States v. Melton, 491 F.2d 45, 57-58 (D.C. Cir. 1973)
 (remanding for resentencing on lesser included offense even
 where the government chose at trial only to seek conviction on
 the greater offense); but see United States v. Vasquez-Chan,
 978 F.2d 546, 553-54 & nn.5,6 (9th Cir. 1992) (appellate court
 may order entry of judgment on lesser included offense only
 when the jury was explicitly instructed it could find the
 defendant guilty of the lesser included offense and when the
 government, on appeal, makes an alternative argument for the
 entry of judgment against defendant on the lesser included
 offense). After all, conduct meeting all the elements of 16
 U.S.C. 3373(d)(1) except its market value requirement would
 appear to fall within 16 U.S.C. 3373(d)(2). See supra at 5.
 On the other hand, we detect an obvious defect in the
 government's case. As we have stated, the conduct for which
 Romano was indicted and convicted -- i.e., the "conduct that
 involves the . . . purchase of . . . wildlife," 16 U.S.C. 
 3373(d)(1)(B) -- was Romano's annual purchasing of guiding and
 outfitting services for the prospective illegal taking of
 wildlife. See supra at 7-8; see also 16 U.S.C. 3372(c)(2). 
 We think it obvious, or at least plausible, that Romano
 "engag[ed] in" this "conduct," 16 U.S.C. 3373(d)(1)(B), only
 for so long as it took him to consummate each of his purchases
 of services. The government appears to agree. In its brief,
 it argued: "Since 3372(c)(2) clearly indicates there can be
 a prospective taking, it follows that the purchase of wildlife
 by purchasing guiding services can come before the illegal
 taking." And yet, this reading of the Act proves the
 incoherence of this prosecution.
 As we have observed, conduct involving a purchase of
 guiding and outfitting services for the prospective illegal
 taking of wildlife would appear to be unlawful by the combined
 effect of 16 U.S.C. 3372(a)(2) and (c)(2). For such
 unlawful conduct also to constitute a crime, however, it would
 have to fall within the Act's criminal provision -- 16 U.S.C.
 3373(d). And this provision requires, inter alia, that an
 accused engage in the conduct with a statutorily-prescribed
 knowledge base: "knowing that the . . . wildlife . . . weretaken, possessed, transported, or sold in violation of" law, 16
 U.S.C. 3373(d)(1)(B) (emphasis supplied), in the case of a
 felony; or with reason to "know that the . . . wildlife . . .
 were taken, possessed, transported, or sold in violation of"
 law, 16 U.S.C. 3373(d)(2) (emphasis supplied), in the case of
 a misdemeanor.
 Obviously, however, a hunter who purchases guiding or
 outfitting services to assist him in a prospective unlawful
 taking of wildlife can neither know nor have reason to know at
 the time of his purchase that the wildlife he has
 constructively purchased by operation of 16 U.S.C. 3372(c)
 "were taken" (or, for that matter, "possessed" or
 "transported") in violation of state law. The reason is
 clear: Congress' use of the word "were" implies that, at the
 time of the purchase, the underlying taking, possession, or act
 of transport cannot still be in prospect; it must have already
 occurred. Cf. United States v. Carpenter, 933 F.2d 748, 750-51
 (9th Cir. 1991) (engaging in a similar temporal parsing of 16
 U.S.C. 3372(a)(1)). Thus, to affirm a conviction in
 circumstances such as these, we would have to say that the word
 "were," as used in 16 U.S.C. 3373(d), also can mean "would
 be." Yet even if the word "were" might be taken to mean "would
 be" in some other criminal statute, the absence of indicia that
 Congress actually intended to criminalize the type of conduct
 for which Romano stands convicted, see infra at 17, precludes
 such a strained construction here, see Reno v. Koray, 115 S.
 Ct. 2021, 2029 (1995) (explaining the rule of lenity). 
 A similar analysis disposes of any argument that,
 when he purchased the guiding and outfitting services, Romano
 knew or had reason to know that the wildlife he would take with
 the assistance of these services "were . . . sold," 16 U.S.C.
 3373(d)(1) and (d)(2), in violation of Alaska law. In a
 case where a buyer purchases such services knowing, or with
 reason to know, that the sale of services is itself illegal
 under state law, we might accept that the buyer "purchased
 wildlife" (per 16 U.S.C. 3372(c)(2)) knowing or having reason
 to know that the wildlife "were . . . sold" in violation of law
 (per 16 U.S.C. 3373(d)). After all, this was the precise
 situation presented in Stenberg, and Congress passed 16 U.S.C.
 3372(c) with the expressed intention of "overturn[ing]"
 Stenberg. See supra at 4. Here, though, where there was
 nothing unlawful about the repeated sales of guiding and
 outfitting services to Romano, there is absolutely no basis for
 concluding that, when he purchased these services, Romano knew
 or had reason to know that the wildlife he constructively
 purchased were or had been sold in violation of Alaska law. 
 Cf. Carpenter, 933 F.2d at 750-51. A buyer's private intention
 to use a purchased item for unlawful purposes -- e.g., the
 purchase of a handgun with the intention to use it in a bank
 robbery -- does not, without more, make the sale of that item
 unlawful.
 As we have stated, Romano has, throughout these
 proceedings, made specific arguments that there is insufficient
 evidence to support his convictions because the government has
 misinterpreted 16 U.S.C. 3372. He has not, however,
 specifically argued that there was insufficient evidence to
 support the jury's findings with respect to the knowledge
 requirements of 16 U.S.C. 3373(d). The propriety of our
 reversing Romano's convictions on the basis of the defect just
 described would therefore appear to be governed by the
 jurisprudence of Fed. R. Crim. P. 52(b). Cf. United States v.
 Belardo-Quinones, 71 F.3d 941, 945 (1st Cir. 1995) (when an
 accused asserts specific arguments in support of a Fed. R.
 Crim. P. 29 motion for acquittal, he waives plenary appellate
 review of other specific arguments for acquittal not then
 made).
 Rule 52(b) provides: "Plain errors or defects
 affecting substantial rights may be noticed although they were
 not brought to the attention of the court." The Supreme Court
 has interpreted this provision to confer a highly circumscribed
 authority on appellate courts. See United States v.
 Bradstreet, ___ F.3d ___, Nos. 97-1164 & 1204, slip op. at 8-9
 (1st Cir. Jan. 29, 1998) (discussing the combined effect of
 United States v. Olano, 507 U.S. 725 (1993), and Johnson v.
 United States, 117 S. Ct. 1544 (1997)). To be correctable
 under Rule 52(b), an error or defect must be "plain," meaning
 "clear" or "obvious" at the time of appellate consideration; it
 must have "affected substantial rights," meaning, in most
 cases, "it must have affected the outcome of the district court
 proceedings"; and leaving it uncorrected must strike us as
 having the potential to "seriously affect[] the fairness,
 integrity or public reputation of judicial proceedings." Id.at 9 (internal quotation marks and citations omitted).
 We think that the defect here is obvious -- the word
 "were" in 16 U.S.C. 3373(d)(1) plainly cannot encompass
 prospective conduct in these circumstances -- and that it
 affected the outcome of Romano's trial. Resolution of this
 appeal therefore turns on whether systemic considerations
 militate in favor of reversal. We believe that they do. While
 Romano is clearly guilty of having committed misdemeanor
 violations of certain Alaska hunting laws, he is just as
 clearly innocent of the felony charges for which he stands
 convicted. This, then, is not just a situation where an
 accused's trial might well have ended in an acquittal had the
 defect been raised; it is a case of demonstrable actual
 innocence of the crimes charged.
 Furthermore, this is the first reported case where
 the government has prosecuted a hunter for purchasing lawful
 services to aid him in the prospective unlawful taking of
 wildlife. To the extent that this might be a "test case," we
 believe that there is a strong institutional interest in
 informing the government that its construction of the Act is
 seriously flawed. So, too, do we think it important to inform
 Congress that, should it wish to criminalize the type of
 conduct at issue in this case -- the purchase of lawfully-sold
 services with the intent to use those services to take wildlife
 unlawfully -- it must amend the statute. As we have explained,
 the government cannot now prosecute such conduct under 16
 U.S.C. 3373(d). Indeed, Congress may well intend that such
 conduct remain entirely within the province of state law. See,
 e.g., S. Rep. 97-123, at 1 (1981), reprinted in 1981
 U.S.C.C.A.N. 1748, 1748 (the purpose of the Act is to curtail
 the "massive illegal trade in fish and wildlife and their parts
 and products") (emphasis supplied); id. at 12, reprinted in1981 U.S.C.C.A.N. at 1759 ("[T]he dealings of a hunter with his
 travel agent or an airlines to arrange a trip for the
 acquisition of wildlife clearly does [sic] not constitute a
 sale or purchase of wildlife. However, a commercial
 arrangement whereby a professional guide offers his services to
 illegally obtain wildlife is, in effect, an offer to sell
 wildlife."). But we cannot say with certainty that this is so.
 III.
 For the reasons stated, 16 U.S.C. 3373(d) does not
 encompass the conduct underlying Romano's convictions. We
 therefore reverse those convictions and remand with
 instructions that judgments of acquittal be entered on Counts
 II-VIII of the indictment.