**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Francisco Jimenez RECIO,
Defendant–Appellant.**

**United States of America,
Plaintiff–Appellee,**

v.

**Adrian Lopez–Meza, Defendant–
Appellant.**

**Nos. 99–30135, 99–30145.
D.C. No. CR–97–00103–BLW**

United States Court of Appeals,
Ninth Circuit.

Filed Oct. 30, 2001

Before: BROWNING, B. FLETCHER,
and GOULD, Circuit Judges.

---

## ORDER

Judges Browning and B. Fletcher have voted to reject the petition for rehearing. Judge Gould would have granted the petition.

Judges Browning and B. Fletcher recommended denial of the petition for rehearing en banc. Judge Gould voted to grant the en banc hearing.

The full court was advised of the petition for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35(b).

The petition for rehearing and for rehearing en banc are DENIED.

O'SCANNLAIN, Circuit Judge, with whom KOZINSKI, T.G. NELSON, TROTT, KLEINFELD, WARDLAW, GOULD, TALLMAN, and RAWLINSON, Circuit Judges, join, dissenting from the denial of rehearing en banc:

With respect, I believe that our court took a wrong turn in the law of conspiracy in *United States v. Cruz*, 127 F.3d 791 (9th Cir.1997), and today's order demonstrates how far off course we have ventured. By failing to rehear *United States v. Recio*, 258 F.3d 1069 (9th Cir.2001), en banc, we let stand the aberration wrought by *Cruz* now compounded by *Recio*. In so doing, we erect serious impediments to legitimate law enforcement efforts to combat drug trafficking by mandating the exclusion of relevant, probative, and, indeed, overwhelming evidence of guilt. We also perpetuate conflict with our sister circuits and, in my view, ignore black letter principles of conspiracy law set out for us by the U.S. Supreme Court. I respectfully dissent from the order denying rehearing en banc.

## I

To convict Recio and Lopez–Meza of conspiracy under 21 U.S.C. § 846, the government bore the burden of proving (1) that there was an agreement to possess the truck load of cocaine and marijuana in question with intent to distribute; and (2) that Recio and Lopez–Meza knew of the agreement's objectives and intended to help further them. *See United States v. Gil*, 58 F.3d 1414, 1423 n. 5 (9th Cir.1995); *United States v. Shabani*, 513 U.S. 10, 16, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). Most surprisingly, the panel majority concluded that there was insufficient evidence to convict.

Even a cursory review of the facts demonstrates the startling nature of the majority's conclusion. Recio and Lopez–Meza were caught red-handed transporting a truck load of cocaine and marijuana worth over $12 million. An unidentified co-conspirator sent them to retrieve the truck from a shopping mall parking lot after police, unbeknownst to Lopez–Meza and Recio, intervened and arrested the original driver Sotelo and passenger Arce, and obtained their cooperation. Police observed Lopez–Meza drive Recio to the mall parking lot and drop him off. Recio drove away in the truck heading west on various back roads, with Lopez–Meza following.

Upon their arrest, both were found with phone cards, pagers, and cell phones. The government introduced expert testimony linking such devices to drug conspiracies; moreover, the particular phone cards and cell phones which they were caught carrying were linked to a "stash house" where the drugs were destined. In addition, both gave highly incriminating statements to police. Recio denied outright that he had been dropped off; ludicrously, he

"stated that he did not know how he got to the mall." 258 F.3d at 1079. He claimed he had been shopping when an unknown man offered him $250 to drive a truck to Recio's own residence, where the man would later pick it up. When asked where he lived, Recio "first gave one address, then another, then stated that he could not remember the address where he lived." *Id.* Judge Gould's dissent aptly observes that "[t]his story is so unbelievable that a reasonable jury would almost certainly view it as an implied admission of guilt." *Id.* at 1079–80. Lopez–Meza gave similarly incriminating statements to police. He explained that he was just "out driving around" and that he was going to see his girlfriend. Although he told police that he lived with his girlfriend, Lopez–Meza could not recall her last name or even the city in which she resided. *Id.* at 1081–82.

Without considering the rest of the circumstantial evidence against Recio and Lopez–Meza, which Judge Gould meticulously recites in his pellucid dissent, these facts alone would be more than sufficient to support the conspiracy convictions. There was undoubtedly an agreement to ship the truck load of cocaine and marijuana with intent to distribute, and Recio and Lopez–Meza were obviously knowingly acting in furtherance of this agreement. Indeed, I would go so far as to say that the defendants' sufficiency of the evidence challenge borders on the frivolous.

Nevertheless, the majority reversed, on the strength of *United States v. Cruz,* 127 F.3d 791 (9th Cir.1997). In that case, Cruz was recruited as a substitute drug courier in a methamphetamine distribution conspiracy after police, unbeknownst to the rest of the conspirators, arrested the original courier and seized the drugs. A divided panel held that a conspiracy ends when its "objective ha[s] been defeated" by government intervention. *Id.* at 795.

There, the majority reversed a § 846 conspiracy conviction because the conspiracy for which he was charged "had been terminated by the government's seizure of the methamphetamine before Cruz became involved." *Id.* Applying *Cruz,* the panel majority in *Recio* required the government to demonstrate that there was sufficient evidence linking Recio and Lopez–Meza to the conspiracy *prior to* the government's initial seizure of the truck and arrest of Sotelo and Arce, which, astoundingly, they held ended the conspiracy.

## II

One would think that the contradictory and incriminating statements made by Recio and Lopez–Meza would have been relevant to the sufficiency of the evidence of a conspiracy to deliver the multi-million dollar load of cocaine contained in the truck which Recio was caught, red-handed, driving. Rather, according to the majority, the inconsistent and transparently mendacious fables that the defendants concocted to explain their actions "point[ ] only to knowledge that they were involved in illicit activity at that time and provides no basis for concluding that they were involved in the conspiracy beforehand." 258 F.3d at 1071.

The majority similarly jettisons the incriminating inferences to be drawn from the telecommunication devices that the defendants carried because such evidence is not probative of defendants' *pre-seizure* involvement in the conspiracy—notwithstanding the fact that the majority itself concedes that such evidence *is* probative of the defendants' general involvement in the scheme to transport the truck load of drugs:

> As for the pagers they carried, one would expect that whoever recruited them to have outfitted them with the standard equipment used in the trade.

Indeed, in light of the strange turn of events this drug shipment had taken, the main conspirators would want to stay in especially close communication with their drivers.

*Id.* at 1072. But isn't that exactly the point?

In short, the majority purports to examine whether sufficient evidence supports Recio and Lopez–Meza's conspiracy convictions even as it closes its eyes to the most probative evidence of their guilt. It could hardly be more apparent that the *Cruz/Recio* decisions constitute a de facto evidentiary exclusionary rule. Unlike the exclusionary rule familiar from the Fourth and Fifth Amendment contexts, however, the *Cruz/Recio* corollary is not triggered by, nor does it deter, wrongful conduct on the part of law enforcement officers. Indeed, the reverse is true: the paradoxical effect of *Cruz* and *Recio* is to exclude evidence of guilt following successful and entirely *legitimate* intervention by law enforcement agents.

With respect, there is simply no principled basis for *Cruz*'s promulgation of an arbitrary and unprecedented limitation on the duration of a conspiracy, nor its extension by the *Recio* majority to exclude evidence *highly* probative of an ongoing conspiracy to distribute a large quantity of illegal drugs. As a result, Recio and Lopez–Meza receive an undeserved windfall, entirely legitimate law enforcement efforts are compromised, and, as I discuss below, fundamental black letter principles of the law of conspiracy are distorted.

### III

The source of the problem is *Cruz*, an ill-advised precedent, which we should have reconsidered en banc and overruled. I respectfully suggest that *Cruz*, and now *Recio*, conflict with our prior and subsequent precedent, with precedent from our sister circuits, and with black letter principles of the law of conspiracy set down for us by the Supreme Court.

### A

*Cruz* reasons that the drug shipment conspiracy had terminated prior to Cruz's involvement because the government's seizure of the drugs, unbeknownst to the remaining conspirators, "defeated the object" of the conspiracy. But the fact that the government's secret intervention in a conspiracy renders the conspirators' subsequent efforts Sisyphean is immaterial because "the criminal agreement itself is the actus reus" of the offense of conspiracy. *Shabani,* 513 U.S. at 16, 115 S.Ct. 382. Indeed, "[a] person ... may be liable for conspiracy even though he was incapable of committing the substantive offense." *Salinas v. United States,* 522 U.S. 52, 64, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997).

In holding that a conspiracy endures only as long as its ultimate goal remains objectively achievable, *Cruz* imports a defense of factual impossibility into the law of conspiracy in direct conflict with the long-standing, black letter principle that impossibility is not a defense to a conspiracy charge. The Supreme Court and our own Court have made this very point many times before. *See, e.g., Salinas,* 522 U.S. at 65, 118 S.Ct. 469 ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable itself."); *United States v. Rabinowich,* 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211 (1915) ("The conspiracy, however fully formed, may fail of its object, however earnestly pursued; the contemplated crime may never be consummated; yet the conspiracy is none the less punishable."); *United States v. Fleming,* 215 F.3d 930,

936 (9th Cir.2000) ("Factual impossibility is not a defense to an inchoate offense" such as conspiracy or attempt.); *United States v. Bosch*, 914 F.2d 1239, 1241 (9th Cir. 1990) (legal impossibility is no defense to conspiracy charge); *United States v. Everett*, 692 F.2d 596, 599 (9th Cir.1983) (same); *United States v. Rueter*, 536 F.2d 296, 298 (9th Cir.1976) (rejecting impossibility defense to conspiracy charge, holding that "[t]he accomplishment of the conspiracy's goal is immaterial to the crime").

Other circuits have also had occasion to hold that impossibility is not a defense to conspiracy liability. *See, e.g., United States v. Hsu*, 155 F.3d 189, 203 (3d Cir. 1998) (impossibility is not a defense to conspiracy); *United States v. Sobrilski*, 127 F.3d 669, 674–75 (8th Cir.1997) (same); *United States v. Belardo–Quinones*, 71 F.3d 941, 944 (1st Cir.1995) (conspiracy may exist even if the object of the conspiracy cannot be achieved); *United States v. Clemente*, 22 F.3d 477, 480–81 (2d Cir. 1994) (factual impossibility is not a defense to conspiracy).

Particularly instructive is *Belardo–Quinones*, in which the First Circuit, in a factually analogous context, expressly rejected the very rule adopted in *Cruz*:

> Appellant's argument resembles the one made by appellants in *United States v. Giry*, 818 F.2d 120 (1st Cir.1987) that because the persons who were to import the cocaine were agents of the Drug Enforcement Agency [DEA] the importation could never actually occur. The court rejected "the faulty assumption that an expressed conspiratorial objective is negated by its factual impossibility." 818 F.2d at 126. Here appellant joined in a conspiracy and performed an essential role in obtaining a boat and crew needed to accomplish the crime. Even if intervening events had made the accomplishment of the criminal purpose

impossible all the elements of a criminal conspiracy were present. *There is no basis for making a distinction between those who start a conspiracy that is impossible from the beginning and one who joins in a conspiracy that has become impossible due to intervening events unknown to the conspirators.*

71 F.3d at 944 (emphasis added). The court observed that Belardo–Quinones failed to cite a single case which "support[s] a proposition that conspiracies end because of impossibility when the conspirators are continuing to actively pursue the original criminal goal." *Id.*

### B

The majority in *Cruz* concedes that the defendant may have been involved in some *other* conspiracy. The majority reasons that, while it was "factually impossible for Cruz to have been a member of [the charged] conspiracy," that is, a "five-member conspiracy" which included the two co-conspirators arrested prior to Cruz's involvement, "Cruz may have been a member of a *new* [three-member] conspiracy" between himself and the two remaining co-conspirators. 127 F.3d at 795 n. 4.

But if the so-called "original" conspiracy is deemed to have ended because the government "defeated its objective" by seizing the methamphetamine, how could it be that a *new* conspiracy would spring to life whose objective was foiled *ab initio?* What baffling logic! If the "original" conspiracy had been terminated because the government's seizure of the drugs defeated its objective, then *ipso facto*, no "new" conspiracy to distribute the same seized drugs could possibly come into existence.

Let us temporarily suspend disbelief and entertain the *Cruz* majority's hypothesis that Cruz may not have been involved in the "original" five-member conspiracy, but rather in some "new" conspiracy that did

not include the two arrested former co-conspirators. At *most,* this would merely suggest that there was a variance between the indictment and proof adduced at trial. Such a variance would warrant reversal only if it "affect[ed] the substantial rights of the parties." *U.S. v. Duran,* 189 F.3d 1071, 1081 (9th Cir.1999) (citing *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

As it is, courts have regularly held variances relating merely to the number of individuals alleged to have participated in a conspiracy to be non-prejudicial and thus not fatal to the indictment. *See, e.g., U.S. v. Johnston,* 146 F.3d 785, 791 (10th Cir. 1998) (no fatal variance when evidence at trial did not prove defendant conspired with all named codefendants in indictment so long as it proved he conspired "with others"); *U.S. v. Gaviria,* 116 F.3d 1498, 1533 (D.C.Cir.1997) (no fatal variance when evidence at trial proved different number of conspirators than alleged in indictment because no prejudice to defendant); *U.S. v. Twitty,* 72 F.3d 228, 231 (1st Cir.1995) (no fatal variance between indictment charging conspiracy involving five persons and proof that only four were involved because indictment did not cause unfair prejudice); *U.S. v. Schurr,* 775 F.2d 549, 555 (3d Cir.1985) (no fatal variance between indictment charging conspiracy involving five persons and proof that only three were involved).

Perhaps the *Cruz* majority advanced the notion that Cruz was involved in some "new" conspiracy because it, too, was somewhat discomfited by the absurdity of concluding that Cruz was not involved in *any* drug distribution conspiracy. But it tendered its hypothesis without so much as a glancing reference to the factors that we have found relevant to the task of distinguishing multiple conspiracies from a single conspiracy. *See, e.g., United States v.*

*Bibbero,* 749 F.2d 581, 587 (9th Cir.1984) (relevant factors include the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals). Under long-standing principles of conspiracy law—not to mention plain common sense—a scheme to transport a single shipment of drugs on a single occasion does not morph into two conspiracies simply because some of the original conspirators withdraw upon their arrest and cooperation with police.

This latter point bears emphasis. As Judge Hall observed in her excellent dissent in *Cruz,* its majority confused the question of the withdrawal of a co-conspirator with the question of the duration of a conspiracy. 127 F.3d at 803. While a co-conspirator may terminate his own *participation* in a conspiracy by taking affirmative acts to "defeat the object of the conspiracy," such withdrawal does not terminate the *conspiracy* itself. *Id.* Quite obviously, it makes no sense at all "to allow remaining conspirators to avoid culpability for acts in furtherance of a conspiracy simply because one or more of their associates have withdrawn or taken steps to defeat the object of the conspiracy." *Id.* Doing so flips the law of co-conspirator withdrawal on its head. Here, paradoxically, thanks to *Cruz,* Recio and Lopez–Meza become the beneficiaries of Arce's own withdrawal and cooperation with police!

## C

At bottom, *Cruz* 's distortion of the law of conspiracy appears to have been prompted by policy concerns over the use of government "sting" operations. The majority in *Cruz* opined that "liability for the original conspiracy on the basis posited by the government could be endless," explaining that "[i]t is not difficult to picture

Balajadia [the arrested co-conspirator co-operating with police] sitting in the Honolulu Airport Police Station with a copy of the Guam telephone directory in hand, following the detectives' instructions to call all of his acquaintances in Guam to come to Honolulu to help him." 127 F.3d 795 & n. 3.

The *Cruz* majority's concern that government agents will "let their fingers do the walking" is both improper and misplaced. It certainly cannot justify throwing the law of conspiracy into disarray premised upon subjective qualms with perfectly legal law enforcement practices. In any event, we have already recognized a limitation to conspiracy liability in the police sting context. In *United States v. Escobar de Bright*, 742 F.2d 1196 (9th Cir.1984), we held that there is "neither a true agreement nor a meeting of minds"—and hence no conspiracy liability—"when an individual 'conspires' to violate the law *with only one other person and that person is a government agent.*" 742 F.2d at 1199 (emphasis added). This principle is a sound one, and follows from the nature of the offense of conspiracy itself, but, of course, had no bearing in either *Cruz* or *Recio.* Instead, both *Cruz* and *Recio* represent back-door attempts to expand the *Escobar* rule in a manner fundamentally inconsistent with *Escobar's* conceptual foundation. Manifestly, when an individual conspires to violate the law with at least one other "true" conspirator, there *is* a meeting of the minds and hence conspiracy liability, notwithstanding the subsequent intervention of government agents.

## IV

It is time that we reinstate the fundamental principle that the duration of a conspiracy is determined by "the scope of the conspiratorial agreement" itself. *Grunewald v. United States*, 353 U.S. 391, 397, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). With our inquiry properly focused on the agreement to transport the truck load of drugs, it is simply irrelevant that Recio and Lopez–Meza may have joined the conspiracy *after* the government arrested Sotelo and Arce. Manifestly, the conspirators' agreement continued apace following the government's initial intervention—an intervention of which the remaining co-conspirators were not even aware. Equally obviously, Recio and Lopez–Meza intended to further the objectives of this conspiracy, notwithstanding the fact that the *goal* of the conspiracy (unbeknownst to them) became incapable of fulfillment. Under long-established principles of conspiracy law, these are the *only* elements the government was required to prove in order to convict Recio and Lopez–Meza.

*Recio* and *Cruz* create intra and inter-circuit conflicts concerning the law of conspiracy and are contrary to Supreme Court precedent. We should have reheard *Recio* en banc so we could overrule *Cruz*.

I respectfully dissent from the regrettable order denying rehearing en banc.

CYNTHIA HOLCOMB HALL, Senior Circuit Judge:

I agree with the views expressed by Judge O'Scannlain.