UNITED STATES *v.* JIMENEZ RECIO ET AL.

No. 01–1184.   Argued November 12, 2002—Decided January 21, 2003

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, SOUTER, THOMAS, and GINS-BURG, JJ., joined. STEVENS, J., filed an opinion concurring in part and dissenting in part, *post*, p. 278.

*Deputy Solicitor General Dreeben* argued the cause for the United States. With him on the brief were *Solicitor General Olson, Assistant Attorney General Chertoff, James A. Feldman,* and *Jonathan L. Marcus.*

*M. Karl Shurtliff* argued the cause for respondents and filed a brief for respondent Jimenez Recio. *Thomas A. Sullivan* filed a brief for respondent Lopez-Meza.*

---

*\*Jay Alan Sekulow, Stuart J. Roth, Colby M. May, Joel H. Thornton, John P. Tuskey,* and *Shannon D. Woodruff* filed a brief for the American Center for Law and Justice et al. as *amici curiae* urging reversal.

JUSTICE BREYER delivered the opinion of the Court.

We here consider the validity of a Ninth Circuit rule that a conspiracy ends automatically when the object of the conspiracy becomes impossible to achieve—when, for example, the Government frustrates a drug conspiracy's objective by seizing the drugs that its members have agreed to distribute. In our view, conspiracy law does not contain any such "automatic termination" rule.

I

In *United States* v. *Cruz,* 127 F. 3d 791, 795 (CA9 1997), the Ninth Circuit, following the language of an earlier case, *United States* v. *Castro,* 972 F. 2d 1107, 1112 (CA9 1992), wrote that a conspiracy terminates when " 'there is affirmative evidence of abandonment, withdrawal, disavowal *or defeat of the object of the conspiracy.*' " (Emphasis added.) It considered the conviction of an individual who, the Government had charged, joined a conspiracy (to distribute drugs) after the Government had seized the drugs in question. The Circuit found that the Government's seizure of the drugs guaranteed the "defeat" of the conspiracy's objective, namely, drug distribution. The Circuit held that the conspiracy had terminated with that "defeat," *i. e.,* when the Government seized the drugs. Hence the individual, who had joined the conspiracy after that point, could not be convicted as a conspiracy member.

In this case the lower courts applied the *Cruz* rule to similar facts: On November 18, 1997, police stopped a truck in Nevada. They found, and seized, a large stash of illegal drugs. With the help of the truck's two drivers, they set up a sting. The Government took the truck to the drivers' destination, a mall in Idaho. The drivers paged a contact and described the truck's location. The contact said that he would call someone to get the truck. And three hours later, the two defendants, Francisco Jimenez Recio and Adrian Lopez-Meza, appeared in a car. Jimenez Recio drove away in the truck; Lopez-Meza drove the car away in a simi-

lar direction. Police stopped both vehicles and arrested both men.

A federal grand jury indicted Jimenez Recio, Lopez-Meza, and the two original truck drivers, charging them with having conspired, together and with others, to possess and to distribute unlawful drugs. A jury convicted all four. But the trial judge then decided that the jury instructions had been erroneous in respect to Jimenez Recio and Lopez-Meza. The judge noted that the Ninth Circuit, in *Cruz*, had held that the Government could not prosecute drug conspiracy defendants unless they had joined the conspiracy before the Government seized the drugs. See *Cruz, supra*, at 795–796. That holding, as applied here, meant that the jury could not convict Jimenez Recio and Lopez-Meza unless the jury believed they had joined the conspiracy before the Nevada police stopped the truck and seized the drugs. The judge ordered a new trial where the jury would be instructed to that effect. The new jury convicted the two men once again.

Jimenez Recio and Lopez-Meza appealed. They pointed out that, given *Cruz*, the jury had to find that they had joined the conspiracy before the Nevada stop, and they claimed that the evidence was insufficient at both trials to warrant any such jury finding. The Ninth Circuit panel, by a vote of 2 to 1, agreed. All three panel members accepted *Cruz* as binding law. Two members concluded that the evidence presented at the second trial was not sufficient to show that the defendants had joined the conspiracy before the Nevada drug seizure. One of the two wrote that the evidence at the first trial was not sufficient either, a circumstance she believed independently warranted reversal. The third member, dissenting, believed that the evidence at both trials adequately demonstrated preseizure membership. He added that he, like the other panel members, was bound by *Cruz*, but he wrote that in his view *Cruz* was "totally inconsistent with long established and appropriate principles of the law of conspiracy," and he urged the Circuit to overrule it en

banc "at the earliest opportunity." 258 F. 3d 1069, 1079, n. 2 (2001) (opinion of Gould, J.).

The Government sought certiorari. It noted that the Ninth Circuit's holding in this case was premised upon the legal rule enunciated in *Cruz.* And it asked us to decide the rule's validity, *i. e.*, to decide whether "a conspiracy ends as a matter of law when the government frustrates its objective." Pet. for Cert. (I). We agreed to consider that question.

## II

In *Cruz,* the Ninth Circuit held that a conspiracy continues " 'until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy.' " 127 F. 3d, at 795 (quoting *Castro, supra,* at 1112). The critical portion of this statement is the last segment, that a conspiracy ends once there has been " 'defeat of [its] object.' " The Circuit's holdings make clear that the phrase means that the conspiracy ends through "defeat" when the Government intervenes, making the conspiracy's goals impossible to achieve, even if the conspirators do not know that the Government has intervened and are totally unaware that the conspiracy is bound to fail. In our view, this statement of the law is incorrect. A conspiracy does not automatically terminate simply because the Government, unbeknownst to some of the conspirators, has "defeat[ed]" the conspiracy's "object."

Two basic considerations convince us that this is the proper view of the law. First, the Ninth Circuit's rule is inconsistent with our own understanding of basic conspiracy law. The Court has repeatedly said that the essence of a conspiracy is "an agreement to commit an unlawful act." *Iannelli* v. *United States,* 420 U. S. 770, 777 (1975); see *United States* v. *Shabani,* 513 U. S. 10, 16 (1994); *Braverman* v. *United States,* 317 U. S. 49, 53 (1942). That agreement is "a distinct evil," which "may exist and be punished whether or not the substantive crime ensues." *Salinas* v. *United*

*States*, 522 U. S. 52, 65 (1997). The conspiracy poses a "threat to the public" over and above the threat of the commission of the relevant substantive crime—both because the "[c]ombination in crime makes more likely the commission of [other] crimes" and because it "decreases the probability that the individuals involved will depart from their path of criminality." *Callanan* v. *United States*, 364 U. S. 587, 593–594 (1961); see also *United States* v. *Rabinowich*, 238 U. S. 78, 88 (1915) (conspiracy "sometimes quite outweigh[s], in injury to the public, the mere commission of the contemplated crime"). Where police have frustrated a conspiracy's specific objective but conspirators (unaware of that fact) have neither abandoned the conspiracy nor withdrawn, these special conspiracy-related dangers remain. Cf. 2 W. LaFave & A. Scott, Substantive Criminal Law § 6.5, p. 85 (1986) ("[i]mpossibility" does not terminate conspiracy because "criminal combinations are dangerous apart from the danger of attaining the particular objective"). So too remains the essence of the conspiracy—the agreement to commit the crime. That being so, the Government's defeat of the conspiracy's objective will not necessarily and automatically terminate the conspiracy.

Second, the view we endorse today is the view of almost all courts and commentators but for the Ninth Circuit. No other Federal Court of Appeals has adopted the Ninth Circuit's rule. Three have explicitly rejected it. In *United States* v. *Wallace*, 85 F. 3d 1063, 1068 (CA2 1996), for example, the court said that the fact that a "conspiracy cannot actually be realized because of facts unknown to the conspirators is irrelevant." See also *United States* v. *Belardo-Quiñones*, 71 F. 3d 941, 944 (CA1 1995) (conspiracy exists even if, unbeknownst to conspirators, crime is impossible to commit); *United States* v. *LaBudda*, 882 F. 2d 244, 248 (CA7 1989) (defendants can be found guilty of conspiracy even if conspiracy's object "is unattainable from the very beginning"). One treatise, after surveying lower court conspir-

acy decisions, has concluded that "[i]mpossibility of success is not a defense." 2 LaFave & Scott, Substantive Criminal Law § 6.5, at 85; see also *id.*, § 6.5(b), at 90–93. And the American Law Institute's Model Penal Code § 5.03, p. 384 (1985), would find that a conspiracy "terminates when the crime or crimes that are its object are committed" or when the relevant "agreement . . . is abandoned." It would not find "impossibility" a basis for termination.

The *Cruz* majority argued that the more traditional termination rule threatened "endless" potential liability. To illustrate the point, the majority posited a sting in which police instructed an arrested conspirator to go through the "telephone directory . . . [and] call all of his acquaintances" to come and help him, with the Government obtaining convictions of those who did so. 127 F. 3d, at 795, n. 3. The problem with this example, however, is that, even though it is not necessarily an example of entrapment itself, it draws its persuasive force from the fact that it bears certain resemblances to entrapment. The law independently forbids convictions that rest upon entrapment. See *Jacobson* v. *United States*, 503 U. S. 540, 548–549 (1992); *Sorrells* v. *United States*, 287 U. S. 435, 442–445 (1932). And the example fails to explain why a different branch of the law, conspiracy law, should be modified to forbid entrapment-like behavior that falls outside the bounds of current entrapment law. Cf. *United States* v. *Russell*, 411 U. S. 423, 435 (1973) ("defense of entrapment . . . not intended to give the federal judiciary . . . veto" over disapproved "law enforcement practices"). At the same time, the *Cruz* rule would reach well beyond arguable police misbehavior, potentially threatening the use of properly run law enforcement sting operations. See *Lewis* v. *United States*, 385 U. S. 206, 208–209 (1966) (Government may "use decoys" and conceal agents' identity); see also M. Lyman, Criminal Investigation 484–485 (2d ed. 1999) (explaining the importance of undercover operations in enforcing drug laws).

In tracing the origins of the statement of conspiracy law upon which the *Cruz* panel relied, we have found a 1982 Ninth Circuit case, *United States* v. *Bloch*, 696 F. 2d 1213, in which the court, referring to an earlier case, *United States* v. *Krasn*, 614 F. 2d 1229 (CA9 1980), changed the language of the traditional conspiracy termination rule. *Krasn* said that a conspiracy is "'presumed to continue unless there is affirmative evidence that *the defendant* abandoned, withdrew from, or disavowed the conspiracy *or defeated its purpose.*'" *Id.,* at 1236 (emphasis added). The *Bloch* panel changed the grammatical structure. It said that "a conspiracy is presumed to continue until *there is* . . . defeat of the purposes of the conspiracy." 696 F. 2d, at 1215 (emphasis added). Later Ninth Circuit cases apparently read the change to mean that a conspiracy terminates, not only when the *defendant* defeats its objective, but also when *someone else* defeats that objective, perhaps the police. In *Castro,* the panel followed *Bloch.* 972 F. 2d, at 1112. In *Cruz,* the panel quoted *Castro.* 127 F. 3d, at 795. This history may help to explain the origin of the *Cruz* rule. But, since the Circuit's earlier cases nowhere give any reason for the critical change of language, they cannot help to justify it.

## III

We conclude that the Ninth Circuit's conspiracy-termination law holding set forth in *Cruz* is erroneous in the manner discussed. We reverse the present judgment insofar as it relies upon that holding. Because Jimenez Recio and Lopez-Meza have raised other arguments not here considered, we remand the case, specifying that the Court of Appeals may consider those arguments, if they were properly raised.

The judgment of the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, concurring in part and dissenting in part.

In accordance with *United States* v. *Cruz*, 127 F. 3d 791, 795–796 (CA9 1997), the District Judge charged the jury with the following instruction:

> "A defendant may only be found guilty of the conspiracy charged in the indictment if he joined the conspiracy at a time when it was possible to achieve the objective of that conspiracy." App. to Pet. for Cert. 75a–76a.

For the reasons stated in the Court's opinion, that instruction was erroneous.

My reason for not joining the Court's opinion without qualification is procedural. The relevant Rule in effect at the time of this trial provided: "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Fed. Rule Crim. Proc. 30 (1988). The Government neither objected to the erroneous instruction at trial, nor bothered to question the validity of the *Cruz* decision on appeal to the Ninth Circuit.* Although the Government did challenge *Cruz* in its petition for rehearing en banc, in my judgment that challenge came too late to preserve the question the Court decides today.

---

*Indeed, the Government embraced the flawed *Cruz* rule in its closing argument to the jury:

"So, in summary, assuming that you find that this conspiracy simply encompassed the one load, in order for each defendant to be found guilty, what must be proved beyond a reasonable doubt? That there was a drug conspiracy; number 2, it was limited to just the one load that was seized; the defendant joined that conspiracy, became involved in the conspiracy; the defendant joined or became involved *before the narcotics were seized* .... If one of those elements is missing, you must acquit. That's the burden that's placed on the United States, *one that we willingly accept.*" App. to Brief in Opposition 34a (emphases added).

Cf. *United States* v. *Williams*, 504 U. S. 36, 56–60 (1992) (STEVENS, J., dissenting).   The prosecutor, like the defendant, should be required to turn square corners.