**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alonzo SUGGS & Joyce Kay Ogle,**
**Defendants–Appellants.**

**Nos. 01–2728, 01–4159.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 29, 2003.

Decided Feb. 14, 2003.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

ORDER

Alonzo Suggs and Joyce Kay Ogle were each convicted of conspiracy to possess with intent to distribute at least five kilograms of cocaine, 21 U.S.C. §§ 846, 841(a)(1), and Suggs was also convicted of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). They each appeal (Suggs is No. 01–2728 and Ogle is No. 01–4159), both arguing that the district court committed plain error in allowing the gov-

ernment to present evidence of multiple conspiracies, one of which was not charged in the indictment. We affirm.

On July 27, 2000, a police officer at Phoenix airport noticed a "suspicious" suitcase bound for Lambert Airport in St. Louis and notified DEA agents there. When the flight arrived in St. Louis, agents located the suitcase and inspected it with a drug-detection dog. The dog indicated that the suitcase contained or had been around narcotics. The agents sent the suitcase on through baggage where it was claimed by John Ellebracht. The agents approached Ellebracht and asked if he would speak with them, and he agreed to do so. They then asked to search the suitcase, and he consented. The suitcase contained over ten kilograms of cocaine and over seven kilograms of marijuana wrapped in cellophane. The agents arrested Ellebracht.

Ellebracht told the agents that the suitcase was not his and he was transporting it for Suggs. He explained that he was recruited by Ogle to make such trips for Suggs, that he had made several in the past, and that Suggs paid him $500 per trip plus expenses. After this trip he was to deliver the suitcase to Suggs at a restaurant in St. Louis. He also told agents that he did not know there were drugs in the suitcase but suspected it. Finally, he explained that he and Ogle were friends who had used crack together, and each had purchased crack from Suggs.

The agents then had Ellebracht attempt to contact Suggs. Ellebracht placed four telephone calls to numbers he had for Suggs. Ogle returned each call. Ellebracht asked to speak with Suggs, but during each call Ogle told him that he would have to meet with her first before speaking to Suggs. They agreed to meet at a bar, and agents arrested Ogle at the bar. Ogle told the agents that Suggs asked her to return Ellebracht's calls and to meet with him, and then to page Suggs when she had done so.

In October 2000 a grand jury charged Ellebracht, Ogle, and Suggs with one count of conspiracy to possess cocaine with intent to distribute for a period "on or about March of 1999, to on or about July 27, 2000." (The grand jury also returned a second count against Suggs for the unlawful possession of a firearm by a felon for an incident occurring in 1996.) Ellebracht pleaded guilty and testified at trial against Ogle and Suggs. A jury found both Ogle and Suggs guilty on the conspiracy charge and Suggs guilty on the firearm charge. Ogle was sentenced to 120 months' imprisonment, five years of supervised release, a $750 fine, and a $100 special assessment. Suggs was sentenced to terms of 300 and 120 months' imprisonment to run concurrently, terms of ten years and three years of supervised release to run concurrently, a $2,000 fine, and a $200 special assessment.

On appeal Ogle and Suggs argue that the district court erred in allowing the government to present evidence of a conspiracy not charged in the indictment and in not providing a jury instruction on multiple conspiracies. They contend that evidence of events occurring after agents arrested Ellebracht (the phone calls with Ogle; her arrival and arrest at the bar; and her statement that Suggs told her to call back Ellebracht, meet him, and then call Suggs) was related to a second, separate conspiracy–namely, a conspiracy to conceal the first conspiracy. Consequently, they further contend that they were prejudiced because the jury may have convicted them for this uncharged conspiracy. Because they failed to raise this issue at trial, we review for plain error. *United States v. Algee*, 309 F.3d 1011, 1014 (7th Cir.2002).

First, the events the defendants point to do not appear to form a separate conspiracy. A conspiracy does not end merely because the government becomes involved. *United States v. Jimenez Recio*, 537 U.S. 270, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003); *United States v. Haddad*, 976 F.2d 1088, 1093 (7th Cir.1992). Therefore, the arrest of Ellebracht did not necessarily terminate the conspiracy. These events occurred within the time period specified in the indictment, and neither Ogle nor Suggs point to any evidence showing that they had abandoned the conspiracy. They argue that they "suspected" that Ellebracht had been arrested, but this does not show that they had given up on the conspiracy. Whether a conspiracy exists is a factual question, *United States v. Williams*, 272 F.3d 845, 862 (7th Cir.2002); *United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir.1991), and a rational jury may have considered these events to be part of the charged conspiracy. Moreover, even if not part of the conspiracy, evidence of these events may have been "intricately related" to the conspiracy, and therefore admissible to complete the story or to fill in chronological gaps. *See United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir.1998); *United States v. Lahey*, 55 F.3d 1289, 1295–96 (7th Cir.1995) (evidence of conspiracy to conceal crime admissible to prove charged crime).

Even assuming, however, that this evidence concerns a separate conspiracy not charged in the indictment, such a variance would be harmless. When the government proves multiple conspiracies at trial but alleges just one in the indictment, the variance is harmless so long as sufficient evidence supports the charged conspiracy. *Williams*, 272 F.3d at 862; *United States v. Jones*, 275 F.3d 648, 651 (7th Cir.2001); *United States v. Severson*, 3 F.3d 1005, 1009–1010 (7th Cir.1993). The conjecture by Suggs and Ogle that the jury may have convicted them for the uncharged conspir-

acy is irrelevant so long as sufficient evidence supported the charged conspiracy. *Williams*, 272 F.3d at 862. The absence of a multiple-conspiracies jury instruction is likewise harmless where, as here, the jury was instructed that the government must prove the conspiracy charged in the indictment. *Id.; Cusimano*, 148 F.3d at 830.

In this case ample evidence supports the conclusion that Ogle and Suggs engaged in the charged conspiracy. The evidence against Suggs was overwhelming: Ellebracht testified that Suggs offered him $500 to make the trip, that he had made approximately 25 such trips for Suggs in the past, and that he and Ogle purchased cocaine from Suggs in the past; moreover, three other witnesses testified that they also regularly purchased crack or cocaine from Suggs. As for Ogle, Ellebracht testified that she recruited him to be a courier for Suggs and that he and Ogle had purchased crack from Suggs in the past. Ellebracht also testified that when Ogle recruited him she said that she would not risk making the trips herself based on the small amount of money Suggs was offering—thereby giving the jury reason to infer that Ogle knew the nature of the trips for which she recruited Ellebracht. The government also introduced evidence that following her arrest and before her trial Ogle was found with false identification in Texas and attempted to conceal her identity from police officers. Therefore, a rational jury had evidence from which to conclude that Suggs and Ogle each engaged in the charged conspiracy.

AFFIRMED