RAWLINSON, Circuit Judge,
concurring in part and dissenting in part:
I agree that there was no violation of the defendants’ due process rights when the *1183 government indicted and prosecuted the defendants for violations of the Contraband Cigarette Trafficking Act (CCTA). See United States v. Baker, 63 F.3d 1478, 1492 (9th Cir.1995).
I also agree that neither the Treaty at Point Elliott nor any Washington law deprives the State of Washington of its inherent power to enforce its cigarette tax laws against the defendants. See id. at 1485 (interpreting a similar treaty provision and concluding that the CCTA did not impermissibly restrict tribal trading); see also Matheson v. Wash. State Liquor Control BdL, 132 Wash.App. 280, 130 P.3d 897, 900 (2006) (preserving the State of Washington’s right to collect taxes on cigarette sales under state law).
Although there is much on which we agree, on two points I specifically and distinctly part company with the majority. First, it is unquestioned that the defendants failed to even mention the statute of limitations in the proceedings before the district court, including in the plea agreements. Indeed, the only issue reserved for appeal was the defendant’s due process claim. Because the statute of limitations is an affirmative defense, the defendants’ failure to raise the issue in district court and/or preserve it for appeal in their plea agreements constitutes a waiver. See United States v. Akmakjian, 647 F.2d 12, 14 (9th Cir.1981) (“The Supreme Court has held that the statute of limitations is an affirmative defense that is waived unless raised at trial....”) (citations omitted); see also United States v. Littlefield, 105 F.3d 527, 528 (9th Cir.1997) (holding that the defendant’s guilty plea foreclosed any subsequent statute of limitations argument).[1]
The majority opinion divides the charged conspiracy into three periods: the period from 1999 to 2003, before the cigarette tax contract (CTC) between the State of Washington and the Swinomish Tribe was signed; the period from October, 2003, to March, 2005, when the CTC was in effect and the Defendants were selling cigarettes pursuant to a license issued by the Swinomish Tribe; and the period from April, 2005, to May, 2007, when the CTC was in effect, but the Defendants were not operating pursuant to a license issued by the Tribe. See Majority Opinion, p. 1171. According to the majority, criminal charges for the first period fall outside the statute of limitations. See Majority Opinion, p. 1171.[2] Although the majority acknowledges that because the government alleged a conspiracy beginning in 1999 and continuing through 2007, only one overt act in furtherance of the conspiracy must *1184 have occurred during that period, the majority reasons “that there were no state cigarette taxes applicable to the Wilburs” during the period when the CTC was in effect and when the Wilburs were licensed by the Tribe to sell, cigarettes. Majority Opinion, p. 1171.
I disagree with the majority’s reasoning on this point and I agree with the district court that the Wilburs were not entitled to retrocession of the state cigarette taxes that would otherwise be due. It is undisputed that the Wilburs failed to pay to the Tribe the taxes that would otherwise be due to the state. See RCW § 43.06.455(3) (providing that the tribal cigarette tax under a CTC was “in lieu of all state cigarette taxes”). But the tribal cigarette taxes were in lieu of state cigarette taxes only to the extent that the cigarette sales conformed to the requirements of the CTC. See CTC, HV.6. Paragraph V.l.a of the CTC provided that cigarettes sold by tribal licensees “shall bear a Tribal tax stamp” to signify that tribal taxes had been paid in lieu of the otherwise applicable state cigarette taxes. Cigarettes sold by the Wilburs bore no Tribal tax stamp because the Wilburs paid no cigarette taxes to the Tribe, despite being licensed by the Tribe under the CTC.
I decline to join the majority’s view that the mere existence of the CTC between the State of Washington and the Tribe enabled the Wilburs to completely escape their obligation to pay taxes and thereby realize profits in the millions of dollars at the expense of the Tribe. The express intent of the CTC legislation was that cigarette taxes be paid, not avoided. The majority’s interpretation of the Washington law effectuates tax avoidance in contravention of the avowed legislative intent. Indeed, the retrocession language in the statute is explicitly conditioned on the payment of tribal taxes in lieu of the payment of state taxes. The majority’s interpretation reads this provision out of the legislation, thereby violating a cardinal principle of statutory construction. See Lyon v. Chase Bank USA, N.A., 656 F.3d 877, 890 (9th Cir.2011) (cautioning that statutes should be interpreted to give effect to all provisions).
My second point of disagreement is with the majority’s circuitous and gratuitous discussion addressing the confluence of multiple conspiracies, constructive amendment, variance, and the statute of limitations. See Majority Opinion, pp. 1176-79. I do not agree that the majority’s analysis reflects the correct approach to resolving this case. As mentioned above, I seriously doubt whether the majority’s analysis is even viable under our precedent. See United States v. Krasn, 614 F.2d 1229, 1236 (9th Cir.1980) (“Krasn asserts that since the alleged error implicates the statute of limitations, it may be raised for the first time on appeal. This is contrary to the rule of this circuit.”) (citations omitted). Undeterred, the majority ignores this precedent and proceeds with an analysis anchored in a questionable statute of limitations premise.
In any event, the majority’s attempt to distinguish our decision in United States v. Krasn, 614 F.2d 1229 (9th Cir.1980) and the Sixth Circuit’s decision in Continental Baking Co. v. United States, 281 F.2d 137 (6th Cir.1960) is singularly unpersuasive.
As a preliminary matter, the majority conducts its analysis as if we were reviewing de novo. However, because not even a whiff of a multiple conspiracy argument was raised in the district court, we review for plain error. See Krasn, 614 F.2d at 1235. When viewed in this context, there is no intellectually honest way to impute plain error to the district court. This is especially true in view of our practice of recognizing plain error “[o]nly in exceptional situations....” Id.
*1185 The underpinning of the majority’s argument is its reliance on our subsequently overruled conspiracy theory articulated in United States v. Cruz, 127 F.3d 791 (9th Cir.1997). In Cruz, we developed the following conspiracy rule: “A conspiracy is deemed to continue until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy....” Id. at 795 (citation and internal quotation marks omitted).
Cruz addressed a criminal conviction predicated on a conspiracy to distribute methamphetamine. See id. at 794. Before Cruz joined the conspiracy, the drugs that were the object of the conspiracy to distribute were seized by the government and Cruz’s co-conspirator was arrested.[3] See id. Cruz twice moved for acquittal on the basis that the conspiracy had ended before he became involved. See id. at 794-95. After the district court denied Cruz’s motions, he appealed. See id.
On appeal, the Cruz panel applied the aforementioned “conspiracy rule” and held that Cruz could not be prosecuted for participating in the conspiracy. According to the Cruz panel, the government’s seizure of the drugs terminated the conspiracy. Under that rationale, no conspiracy existed when Cruz became involved, and Cruz could not be convicted of the conspiracy charge. See id. at 795.
Although the majority does not cite to Cruz directly, the quoted language comes directly from Cruz. See Majority Opinion, p. 1176 (“The general rule is that a conspiracy continues until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy....”) (quoting United States v. Recio (Redo I), 371 F.3d 1093, 1096 (9th Cir.2004)) (internal quotation marks omitted); see also Redo I, 371 F.3d at 1096 (referring- to the “Cruz conspiracy rule, which held that a conspiracy continues until there is affirmative evidence of abandonment, withdrawal, disavowal, or defeat of the object of the conspiracy”) (quoting Cruz, 127 F.3d at 795).
It is significant that the majority relies on Redo because the United States Supreme Court expressly and explicitly reversed the “Cruz conspiracy rule” in United States v. Redo (Redo II), 537 U.S. 270, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003) to the extent that the rule relies on termination of the conspiracy based on government conduct that defeats the object of the conspiracy. See id. at 274, 123 S.Ct. 819 (explaining that a conspiracy does not terminate merely because government action has defeated the object of the conspiracy). This ruling by the Supreme Court eviscerates the majority’s contention that the existence of the CTC and licensing by the Tribe terminated the Wilburs’ conspiracy to avoid paying the cigarette taxes required by law.
As the Supreme Court noted, the “essence of a conspiracy is an agreement to commit an unlawful act....” Id. (citations and internal quotation marks omitted). The agreement to combine for an unlawful cause is “a distinct evil” separate and apart from the substantive crime that is the object of the conspiracy. Id. The conspiracy may be the subject of prosecution whether or not the substantive crime is ever consummated. See id. Indeed, the Supreme Court took exception to the conspiracy termination theory espoused in Cruz because a conspiracy “decreases the probability” that the co-conspirators “will depart from their path of criminality.” Id. at 275, 123 S.Ct. 819 (citations omitted).
*1186 The Supreme Court’s expressed concern is exemplified in this case because the Wilburs never once ceased their criminal activity. Throughout the existence of the CTC and despite being licensed by the Tribe, the Wilburs continuously conspired to avoid paying the cigarette taxes that were due under the law.
The cases the majority seeks to distinguish are true to the Supreme Court’s analysis in Recio II. Our decision in Krasn involved a conspiracy to engage in price fixing in violation of the Sherman Act. See 614 F.2d at 1231. The conspiracy was interrupted by a nationwide price freeze. See id. at 1232. Following termination of the nationwide price freeze, the price fixing conspiracy resumed. See id. Following his conviction for conspiracy to violate the Sherman Act, Krasn appealed. Krasn advanced essentially the same argument espoused by the majority in this case— that the nationwide price freeze resulted in an interruption of the conspiracy, thereby resulting in two separate conspiracies, one before the price freeze and one after the price freeze. See id. at 1236.
We rejected Krasn’s multiple conspiracies argument under the plain error standard of review, the same standard that applies to the Wilburs’ appeal if the issue is not waived.[4] In Krasn, we held that the price freeze was not a dividing line delineating two separate conspiracies. Rather, because “the cast of characters to the conspiracy, as well as its purpose, remained the same in spite of the price freeze,” the intervening period when the nationwide price freeze was in effect was “more appropriately characterized” as a period of suspension of activities rather than a termination resulting in two separate conspiracies. Id. (quoting Continental Baking Co. v. United States, 281 F.2d 137, 154 (6th Cir.1960)).
Continental Baking, the case quoted in Krasn, also involved a price fixing scheme. See 281 F.2d at 141. As in Krasn, the price fixing conspiracy was interrupted by the imposition of a nationwide price freeze. See id. at 154. As noted in our Krasn decision, the Sixth Circuit rejected the argument that the price freeze resulted in termination of the pre-price freeze conspiracy. The Sixth Circuit reasoned that if the conspiracy resumed after the price freeze was no longer in effect, the same conspiracy existed, although the conspiracy may have been dormant during the duration of the price freeze. See id. at 154; see also United States v. Payne, 635 F.2d 643, 646 (7th Cir.1980) (“Periods of dormancy could exist between transactions without disrupting or terminating the arrangement. ...”).
The majority seeks to distinguish Krasn and Continental Baking by asserting that “[i]n this case, there was affirmative evidence that there was a termination rather than a suspension of the conspiracy” during the period when the CTC was in effect and the Wilburs were licensed by the Tribe to sell cigarettes. Majority Opinion, pp. 1176-77 (internal quotation marks omitted). The majority also reasons that, in contrast to the price freeze in Continental Baking, the CTC legalized the conspiratorial acts of the Wilburs rather than making the object of the conspiracy impossible, as was the case in Continental Baking. See Majority Opinion, pp. 1176-77. However, this reasoning ignores the Supreme Court’s admonition that the object of the conspiracy is not the primary concern underlying conspiracy laws. Rather, the “distinct evil” targeted by conspiracy laws is the concerted action undertaken through agreement of the co-conspirators. Redo II, 537 U.S. at 274, 123 S.Ct. 819. *1187 The majority’s rationale in no way negates the continued agreement of the Wilburs to avoid payment of cigarette taxes. Rather, as we emphasized in Krasn, “the cast of characters to the conspiracy, as well as its purpose remained the same ...” 614 F.2d at 1236.
Truth be told, the distinction the majority proffers between this case on the one hand and Krasn and Continental Baking on the other hand is more semantic than meaningful. Saying that the object of the conspiracy became legal under federal law is the same as saying it was no longer possible for the Wilburs to conspire to violate the law, the same scenario presented in Krasn and Continental Baking.
Keeping in mind our standard of review, assuming no waiver, it is helpful to articulate precisely what the majority is holding. To conclude that plain error occurred, the error made by the district court must have been so obvious that the court should have been able to avoid it without the error being called to the court’s attention by way of objection. United States v. Matus-Zayas, 655 F.3d 1092, 1098 (9th Cir.2011). The majority holds that, -without the benefit of any objection, the district court should have interposed the Wilburs’ statute of limitations defense and ruled that there were two separate conspiracies, even though the majority acknowledges that there is no precedent so holding. See Majority Opinion, p. 1176. Rather, the majority seeks to explain away precedent to the contrary. See id. at pp. 1176-77. This is not the stuff of plain error. See United States v. Gonzalez-Aparicio, 663 F.3d 419, 428 (9th Cir.2011), as amended (“[A]n error cannot be plain where there is no controlling authority on point ... ”) (citation and internal quotation marks omitted).
To summarize, because the Wilburs waived any statute of limitations defense and because the conspiracy continued for the entire period alleged in the indictment, I would affirm the convictions on that basis alone. I would not delve into the conjoined multiple conspiracies/statute of limitations/varianee/amendment bramble into which the majority ventures. Nevertheless in my view, reliance on the discredited Cruz conspiracy termination analysis, the lack of supporting authority for the majority’s multiple conspiracies conclusion and the majority’s failure to apply the plain error standard leads the majority to a holding I cannot join. I respectfully dissent.

. The majority implies that it would have been futile for the Wilburs to raise a statute of limitations argument. Majority Opinion, p. 3742. However, the case cited by the majority in support of that premise, United States v. Manning, 56 F.3d 1188 (9th Cir.1995), is in-apposite. In Manning, the defendant was charged with a violation of 18 U.S.C. § 1716, which proscribes murder by a mail bomb. See id. at 1193. At the time of his indictment, violation of § 1716 was a capital offense, with no statute of limitations. See id. at 1195. When we subsequently held that punishing offenses under § 1716 as a capital crime was unconstitutional, the five-year statute of limitations became applicable. See id. Because no statute of limitations applied to a violation of § 1716 when it was a capital offense, there was no statute of limitations defense to waive. See id. Unlike in Manning, a statute of limitations has always been in effect for the Wilburs. Therefore, the futility reasoning from Manning does not apply. The reasoning would apply if no statute of limitations existed for the CCTA when the conspiracy began, but a statute of limitations was later imposed, as in Manning. However, those are not the facts of this case. The unusual facts presented in Manning simply do not support the majority’s attempt to import Manning's limited holding into the strikingly different facts of this case.

. I reject this premise for the reasons articulated in n. 1 above.

. The co-conspirator subsequently cooperated with the government, leading to the arrest of Cruz who, unaware of the seizure, came to retrieve the drugs from the co-conspirator.

. I maintain that the multiple conspiracies argument was waived as part and parcel of the statute of limitations waiver. See pp. 3753-54 above.