WILKINS, Circuit Judge,
concurring:
I agree with much of the reasoning in section III of Judge Millett’s opinion, but my view of this case differs in two ways. First, I do not believe a plain error standard applies. For the reasons set forth in the 2015 panel opinion, Bahlul cannot forfeit his structural Article III claim. See Al Bahlul v. United States, 792 F.3d 1, 3-7 (D.C. Cir. 2015), vacated by order granting rehearing en banc, Al Bahlul v. United States, No. 11-1324 (D.C. Cir. Sept. 25, 2015); see also Commodity Futures Trading Comm’n v. Schor, 478 U.S. 833, 850-51, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). “Every extension of military jurisdiction is an encroachment on the jurisdiction of the civil courts,” Bahlul, 792 F.3d at 5 (quoting Reid v. Covert, 354 U.S. 1, 21, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (plurality)), meaning Bahlul’s challenge “goes to the heart of the judiciary’s status as a coordinate branch of government,” id. at 6. Whether his conspiracy conviction falls within the Article III exception for law-of-war military commissions should be a question for de novo review.
The second reason I write separately is because there is no constitutional violation under a de novo standard. “Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.” Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); see also New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Accordingly, to review Bahlul’s claim, we must test the *798 premise of his contention as applied to him. His particular conviction is far from one for ordinary, inchoate conspiracy. An examination of the record shows Bahlul was really convicted of an offense tantamount to substantive war crimes under a Pinkerton theory of liability. It is not that “any delta between his conspiracy offense and those offenses that international law proscribes is too narrow to rise to the level of plain constitutional error.” Millett Op. 790. There is no delta. The government proved beyond a reasonable doubt that Bahlul knowingly took part in al-Qaeda’s plan on September 11, 2001 to murder American civilians. His statutory conspiracy conviction does not violate international law, which recognizes what is essentially Pinkerton liability, and it therefore comports with Article III. See Bahlul, 792 F.3d at 22 (“The international law of war limits Congress’s authority because the Constitution expressly ties that authority to ‘the Law of Nations.’”) (quoting U.S. Const, art. I, § 8, cl. 10).
I.
Bahlul attacks his conviction for conspiracy under Section 950v(b)(28) of the 2006 Military Commission Act (“2006 MCA”), Pub. L. No. 109-366, 120 Stat. 2600. He alleges that the MCA conspiracy crime violates Article III because the prosecution of inchoate conspiracy violates international law. In other words, Bahlul mounts a facial challenge to the statute, and in so doing assumes that his conviction in fact implicates inchoate conspiracy. But we cannot take Bahlul at his word. Instead, we must scrutinize the statute, and then examine the specific facts of his conviction to see whether it actually bears on the constitutional principle asserted. See United States v. Stevens, 559 U.S. 460, 474, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010); Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). In line with decades of express Supreme Court instruction in this regard, we must treat this case as an as-applied challenge. And when we ask ourselves whether Bahlul was really prosecuted for inchoate conspiracy, the answer is clearly no.
This framework of examining Bahlul’s constitutional challenge to his MCA conviction “[b]y focusing on the factual situation before us” is long-accepted practice. Ferber, 458 U.S. at 768, 102 S.Ct. 3348; see also Sabri v. United States, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004); Chapman v. United States, 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); Bd. of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 484-85, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989); N.Y. State Club Ass’n, Inc. v. City of N.Y., 487 U.S. 1, 11, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988); Vill. of Hoffman Estates, 455 U.S. at 495 n.7,102 S.Ct. 1186; United States v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); Broadrick, 413. U.S. at .610,. 93 S.Ct. 2908; United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975).
It is by now a maxim that a facial attack on a criminal statute simply cannot prevail where the law is constitutional as applied to a defendant’s own conduct. See Schall v. Martin, 467 U.S. 253, 268 n.18, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (“[O]utside the limited First Amendment context, a criminal statute may not be attacked as over-broad.”) (citing Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113); see also Holder v. Humanitarian Law Project, 561 U.S. 1, 20, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010) (“[A] plaintiff who engages in some conduct that is clearly proscribed cannot complain- of the vagueness of the law as applied to the conduct of others.”) (citing Vill. of Hoffman Estates, 455 U.S. at 495, 102 S.Ct. 1186). The Supreme Court has often cautioned that “[fjacial challenges of *799 this sort are especially to be discouraged,” Sabri, 541 U.S. at 609, 124 S.Ct. 1941, and “[t]he fact that [a criminal statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.”[1] United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). “Indeed, this is why facial constitutional challenges [have been] ... unsuccessful as defenses to criminal prosecutions for non-expressive conduct.”[2] Coleman v. DeWitt, 282 F.3d 908, 914 n.3 (6th Cir. 2002).
While Bahlul attempts to deflect attention from his own circumstances by erecting a straw man, it is not our job to answer the abstract question of whether prosecuting inchoate conspiracy violates our separation of powers—we do not even examine whether the elements of Section 950v(b)(28) generally equate to a prosecution for inchoate conspiracy. Rather, we examine whether the acts committed and proven in the course of this specific prosecution really equate with inchoate conspiracy. This jurisprudential approach does not “violate basic principles of ■ criminal justice,” as the dissent urges. See Dissenting Op, at 831. We employ it not -just with regard to criminal statutes, but throughout constitutional adjudication, including in the Article III context. We treat a facial separation of powers challenge “as if it were an as-applied challenge,” and reject it where the particular application of the statute at issue was constitutional, U.S. ex rel. Schweizer v. Oce N.V., 677 F.3d 1228, 1235 & n.7 (D.C. Cir. 2012) (citing Texas v. Johnson, 491 U.S. 397, 403 n.3, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989)); see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 537 F.3d 667, 670 (D.C. Cir. 2008) (“To succeed in its facial challenge to Title I'of the Act under the Appointments Clause and separation of powers, the Fund bears a heavy burden to show that the provisions of which it complains are unduly severe in all circumstances and cannot be constitutionally applied.”) (footnote omitted), aff'd in part, rev’d in part and remanded, 561 U.S. 477, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010).
Evaluated in this way, BahluFs facial challenge must fail because his own conviction does not violate Article III. See infra Part III. He was not convicted of inchoate conspiracy. It does not matter that Bahlul framed his argument as a facial attack; an appellant cannot change our approach to deciding constitutional issues “by concession, inadvertence, poor oral advocacy or otherwise.”[3] Millett Op. 785 (quoting Bah- *800 lul, 792 F.3d at 32 n.3 (Henderson, J., dissenting)). Waiver and forfeiture rules have no application in this regard. Nor are there any “serious due process concerns” raised by this approach to Bahlul’s collateral attack, brought at the eleventh hour following a trial during which he presented no defense, and after he admitted to all but one of the factual allegations against him. Dissenting Op. at 835. It would be particularly ill-advised to ignore the “usual judicial practice” of deciding the as-applied question before proceeding to a facial challenge, Fox, 492 U.S. at 484, 109 S.Ct. 3028, given that “[striking down an Act of Congress ‘is the gravest and most delicate duty that this Court is called on to perform.’ ” Shelby Cty. v. Holder, — U.S. -, 133 S.Ct. 2612, 2631, 186 L.Ed.2d 651 (2013) (quoting Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206 (1927) (Holmes, J., concurring)). This “delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined.” United States v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). But that is what we would be doing if we allowed ourselves to be hurled headlong into the structural Article III claim served up by Bahlul, despite the fact that the record of his conviction raises no such constitutional concern.
While the separation of powers question potentially implicated by this case is a critical one, it is not actually implicated by the facts before us. If it were, I would be inclined to agree with the dissent. However, I cannot join that opinion today on account of the specifics of Bahlul’s conviction, which, for the following reasons, shows he was not convicted of inchoate conspiracy.
II.
There are several features of inchoate conspiracy that make it the “darling of the modern prosecutor’s nursery.” Harrison v. United States, 7 F.2d 259, 263 (2d Cir. 1925). At its “essence,” conspiracy is “an agreement to commit an unlawful act.” Iannelli v. United States, 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The agreement is the prohibited actus reus. 2 Wayne R. LaFave, Substantive CRIMINAL Law § 12.2(a) (2d ed. 2003). It is not necessary that the parties to the conspiracy actually succeed in committing the crime. See United States v. Jimenez Recio, 537 U.S. 270, 274, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003). Many jurisdictions require an overt act in furtherance of the conspiracy, but the overt act itself does not have to be unlawful. LaFave § 12.2(b). The government often proves the existence of the agreement through circumstantial evidence, id. § 12.2(a), and does not need to show express agreement to the plan’s every detail, see Blumenthal v. United States, 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947). Impossibility is not a defense, the merger rule does not apply, and withdrawal from the conspiracy is difficult, requiring an affirmative step. See Neal Katyal, Conspiracy Theory, 112 Yale L.J. 1307, 1309 (2003).
Conspiracy’s detractors therefore disapprove of it as a vague, “elastic, sprawling and pervasive offense.” Krulewitch v. United States, 336 U.S. 440, 445, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J., concurring). At the same time, outlawing conspiracy is important to prevent crimes before they are actually committed. See LaFave § 12.1(c); see also Katyal, supra, at 1313 (“[W]ith giving prosecutors more tools for leverage over conspirators comes the possibility of ... preventing some crime before it happens.”). We punish inchoate crimes precisely because they constitute “[a] step toward the commission of another crime, the step in itself being serious enough to merit punishment.” Inchoate Offense, Blaok’s Law DICTIONARY (10th ed. 2014). Put another way, waiting *801 for the crime to be completed needlessly puts people at risk. See Br. of Amici Curiae Former Gov’t Officials et al. 15 [hereinafter Former Gov’t Officials]. Conspiracy is particularly advantageous in this regard because the crime is complete at the moment of agreement; unlike an attempt crime, it can be punished even before a substantial step towards the offense is taken. See LaFave § 12.1(c).
Importantly, conspiracy is at once a stand-alone crime, and also a theory of liability. As a stand-alone crime against the United States, for example, conspiracy requires several things. See 18 U.S.C. § 371. There must be an agreement by two or more persons to commit an offense. The defendant must deliberately join the conspiracy with knowledge of this purpose. And, one of the conspiracy members must, at some time during its existence, perform an overt act to further or advance the purpose of the agreement. See id; United States v. Treadwell, 760 F.2d 327, 333 (D.C. Cir. 1985); see also 2 Kevin F. O’Malley et al.. Fedehal JURY Practioe & Instructions § 31:03 (6th éd. 2008) [hereinafter Fed. Jury].
Alternatively, as a form of vicarious liability—so-called Pinkerton liability—a member to a conspiracy can be held liable for reasonably foreseeable offenses committed by others in the group. See Pinkerton v. United States, 328 U.S. 640, 646-47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (“And so long as the partnership in crime continues, the partners act for each other in carrying it forward”). Under a Pinkerton theory, a defendant’s responsibility for the underlying offense generally requires that the substantive offense be reasonably foreseeable and committed in furtherance of the conspiracy’s objectives, all while the defendant was a member of the conspiracy. See United States v. Washington, 106 F.3d 983, 1011 (D.C. Cir. 1997); Fed. Jury § 31:10.
Bahlul argues that conspiracy is “dangerously broad in its sweep when used to punish the enemy in war.” Pet’r Br. 24. He and Amici essentially warn that all the so-called evils of inchoate conspiracy—that it is easy to charge, overbroad, and difficult to defend—are amplified when the offense is tried by a law-of-war military commission, as opposed to an Article III court. See Pet’r Br. 29, 33-34; Br. of Amici Curiae Int’l Law Scholars 16-19. That may be true, but for the reasons that follow, Bah-lul’s conviction shares little in common with the above-described features of inchoate conspiracy, and instead bears a close kinship to a conviction under a Pinkerton theory, which does not offend the Constitution.
III.
The 2006 .MCA contained important limitations on military commission authority that distinguish this prosecution from that of ordinary, vanilla conspiracy. As Judge Millett’s opinion points- out, there is a real question as to whether the conspiracy offense codified by the MCA amounts to inchoate conspiracy. See Millett Op. 788-89. Significantly, the statute specifically references victims, containing two sentencing variations depending on whether anybody dies as a result of the conspiracy. 10 U.S.C. § 950v(b)(28) (2006). In other words, by conditioning punishment on either death or other harm befalling another person, the MCA’s version of conspiracy contemplates the completion of a substantive offense. That is a far cry from inchoate conspiracy, which is achieved “even though the substantive offence is not successfully consummated.” Inchoate, Blaok’s Law DiCtionaey (10th ed. 2014) (quoting Andrew Ashworth, Principles of Criminal Law 395 (1991)). Bahlul does not ask us to decide if the MCA’s version of conspiracy always requires a completed offense, but in *802 this case there is one: the September 11th attacks.
Consider next that in a typical prosecution for inchoate conspiracy, the government need only prove that someone who was a member of the conspiracy committed the requisite overt act. Pinkerton, 328 U.S. at 646-47, 66 S.Ct. 1180 (“It is settled that ‘an overt act of one partner may be the act of all without any new agreement specifically directed to that act.’ ”) (quoting United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168 (1910)); Fed. JURY § 31:07. Accordingly, ordinary conspiracy jury instructions say that the acts of co-conspirators can be considered proof of the conspiracy .charge against the defendant. Fed. Jury § 31:06. No similar instruction was given in Bahlul’s trial. By contrast, the MCA’s version of conspiracy requires, and the commission was instructed that it must find, that Bahlul committed an' overt act himself. See 10 U.S.C. § 950v(b)(28); Trial Tr. 846 (directing that the panel find Bahlul “knowingly committed at least one of the following overt acts for the purpose of bringing about one of the objects of the agreement.”).
Not only does the MCA’s statutory conspiracy require a victim and a defendant’s own overt act, but what was proven at Bahlul’s trial also goes far beyond conspiracy’s traditional requirements. The commission’s special verdict form and ten factual findings show that Bahlul was on trial for somethihg that he himself did as part of al-Qaeda’s criminal plan to kill nearly 3,000 civilians by flying planes into the World Trade Center. See App. 116-17. And according to the evidence and the commission’s findings, he did a lot. He played a particularly valuable role supporting two of the 9/11 hijackers, Mohamed Atta and Ziad al Jarrah-. Although at the time he was not aware of the specifics of the September 11th plan, the prosecution introduced evidence that Bahlul roomed with Atta and al Jarrah in Afghanistan, the roommate’s role typically being to motivate and focus the operatives, as well as to keep an eye on them in case they decide to change their minds. Trial Tr. 555-56. More than that, in a 2005 letter, Bahlul admitted that he arranged for Atta and al Jarrah to pledge their loyalty oaths to bin Laden, and “also typed their martyr wills on a computer and personally handed it to Sheikh Usamah Bin-Landin [sic].” App. 145 (Prosecution Ex. 15). Martyr wills are a crucial aspect of al-Qaeda’s twisted ideology and operations. They are declarations that a suicide operative reads into a camera, describing in general terms the terrorist act he is yet to carry out. .Trial Tr. 554. The point of the videotaped message is to motivate the operative, incite others to follow his example, spread fear among al-Qaeda’s enemies, and allow the organization to later prove its responsibility for the terrorist act. Id. at 554, 798-99, 808. “I praise Almighty Allah,” wrote Bahlul, “for allowing me to have [this] simple and indirect role” in the 9/11 .events. App. 145 (Prosecution Ex. 15).
All of this amounts to Bahlul’s Pinkerton liability for at least the murder of protected persons. See 10 U.S.C. §§ 950v(a)(2), (b)(1) (outlawing “murder of protected persons,” defined as “any person entitled to protection under one or more of the Geneva Conventions”); see also Millett Op. 790 (describing the MCA object offenses that violate Article 3 of the Geneva Conventions). The record shows that, during his membership in the conspiracy, Bahlul helped further the conspiracy’s goal of committing substantive war crimes. Even though the commission was instructed that “[p]roof that [a substantive offense] of [murder of protected persons, etc.] ... actually occurred is not required,” Trial Tr. 848, it nonetheless twice confirmed just that; the commission returned specific findings that Atta and al Jarrah *803 committed the September 11, 2001 attacks, App. 117, and that “at the direction of Usama bin Laden, [Bahlul] researched the economic effect of September 11, 2001, attacks on the United States and provided the result of his research to Usama bin Laden,” App. 117. The entire aim of the conspiracy was to murder civilians. See App. 115; Trial Tr. 849 (explaining it necessary to prove beyond a reasonable doubt that “the agreement intended every element” of the substantive war crimes). And the commission found that Bahlul purposefully joined al-Qaeda, App. 116, was a conspiracy member during and after the attacks, see App. at 117, as well as prepared the martyr wills of Atta and al Jarrah “in preparation for the acts of terrorism perpetrated ... on September 11, 2001,”[4] App. at 117 (emphasis added); see also Trial Tr. 849 (instructing that “[t]he overt act ... must be a clear indication that the conspiracy is being carried out.”). In sum, the government provéd all of the Pinkerton elements beyond a reasonable doubt.
At oral argument, Bahlul’s counsel conceded that a conviction under the Pinkerton doctrine does not violate the Constitution. Oral Arg. Tr. 9-10. He could not have answered otherwise, as joint criminal enterprise (“JCE”) is a recognized theory of vicarious liability within the international community.[5] See Hamdan v. Rumsfeld, 548 U.S. 557, 611 n.40, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) (plurality); Br. of Amici Curiae Int’l Law Scholars 10; Br. of Amici Curiae Former Gov’t Officials 6. There are actually three forms of JCE. See Prosecutor v. Tadic, Case No. IT-94-1-A, Judgment, ¶ 220 (Int’l Crim. Trib. for the Former Yugoslavia July 15, 1999). The third variant, or “extended” JCE, occurs when there is “a common purpose to commit a crime where one of the perpetrators commits an act which, while outside the common purpose, is nevertheless a natural and foreseeable consequence of the effecting of that common purpose.” Prosecutor v. Vasiljevic, Case No. IT-98-S2-A, Judgment, ¶ 99 (Int’l Crim. Trib. for the Former Yugoslavia Feb. 25, 2004); see also id. at ¶¶ 94-101 (summarizing elements of JCE I—III); Tadic, Case No. IT-94-1-A, Judgment, at ¶ 204. This is essentially the Pinkerton doctrine.[6] See Elies van Slie-dregt, Criminal Responsibility in International Law, 14 Eur. J. Crime, Crim. L. & Crim. Just. 81, 97 (2006) (“The closest national equivalent of Third Category JCE is the so-called American concept of ‘Pinkerton conspiracy.’ ”); Jens David Ohlin, Joint Intentions to Commit International Crimes, 11 Chi. J. Int’l L. 693, 703 (2011) (“The standard itself for JCE III stems *804 from the Pinkerton v. United States doctrine .... Indeed, even the language in Tadic is borrowed, inter alia, from Pinkerton.”).
Because the factual elements that were proven during Bahlul’s prosecution were indistinguishable from a theory recognized under international law, it does not offend the Constitution. See Bahlul, 792 F.3d at 24 (Tatel, J., concurring) (“[T]he weight of the Court’s language in Quirin strongly indicates that the law-of-war exception is exclusively international.”). As a result, I do not believe we should reach out and decide additional constitutional issues not necessary to resolve this appeal, which is why I am unwilling to wade into the waters pursued by Judge Kavanaugh. See Ex parte Quirin, 317 U.S. 1, 45-46, 63 S.Ct. 2, 87 L.Ed. 3 (1942) ("We have no occasion now to define with meticulous care the ultimate boundaries of the jurisdiction of military tribunals to try persons according to the law of war. It is enough that petitioners here, upon .the conceded facts, were plainly within those boundaries .... ”); see also Rasul v. Bush, 542 U.S. 466, 485, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004) (limiting its holding to only “[w]hat is presently at stake” before the Court). It is first and foremost a conviction we are reviewing. When considering the particular record before us, it shows that the government proved Bahlul joined a conspiracy to murder Americans prior to the September 11, 2001 attacks, remained a member following those attacks, and himself committed overt acts in furtherance of the conspiracy both before and after September 11, 2001. See App. 116-17. As tantamount to a Pinkerton conviction, it does not raise the .concerns that have caused critics to reject the prosecution of inchoate conspiracy as a violation of international law. The charge was not overbroad, the commission was never instructed that the acts or intentions of Bahlul’s co-conspirators should be deemed his acts or intentions, there was a completed offense, and Bahlul admitted that he himself committed several overt acts in furtherance of the completed offense. See Al Bahlul v. United States, 767 F.3d 1, 7 (D.C. Cir. 2014) (en banc). His conviction is very much the opposite of the “overbroad application of the conspiracy principle ... [that] drag[s] innocent people into the prosecution’s net.” Br. of Amici Curiae Int’l Law Scholars 6 (quoting Tel-ford Taylor, Anatomy of the Nuremberg Trials: A Personal Memoir 553 (1992)).
[[Image here]]
When I look at what Bahlul was really convicted of, I see a war crime. Thus, his conviction does not violate the law of nations, or our separation of powers—even under a de novo standard. I further concur with rejecting Bahlul’s additional constitutional challenges on the bases set forth in section IV of Judge Millet’s opinion. For these reasons we should affirm the conviction.

. As Judge Millett’s opinion points out, the First Amendment context is not implicated here by Bahlul’s Article III challenge. See Millett Op. 823.

. For this same reason, the Court did not consider itself restricted to Citizens United’s exact framing of its challenge on appeal. Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 331, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) ("The parties cannot enter into a stipulation that prevents the Court from considering certain remedies if those remedies are necessary to resolve a claim that has been preserved.”).

. Bahlul’s counsel suggests he transcribed the martyr wills "apparently after the September 11th attacks." Pet'r Br. 3 (citing Pet’r App. 141-45). In any case, the commission specifically found that Bahlul prepared them before September 11, 2001. App. 117.

. "[V]ariously called joint criminal enterprise, common purpose, or common plan liability,” JCE finds support “in World War II-era jurisprudence and in cases from the [International Criminal Tribunal for the Former Yugoslavia].” Brief for Specialists in Conspiracy and International Law as Amici Curiae Supporting Petitioner at 19, Hamdan v. Rumsfeld, 548 U.S. 557, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) [hereinafter Hamdan Amici],

.The Hamdan Amici argued that JCE “differs sharply" from Pinkerton liability,, but offered . little more than an explanation that JCE, as a theory of vicarious liability, is not the same as an inchoate offense. Hamdan Amici at 20. Amici in our case do not make a similar claim. That argument is perhaps driven by the need to “distance” JCE from "a formulation that sounds too much like conspiracy. The received wisdom among international lawyers is that conspiracy is a decidedly common law doctrine that finds insufficient international support to. be considered part of international criminal law. Consequently, if JCE amounts to ersatz conspiracy, it will be rejected too.” Jens David Ohlin, Joint Intentions to Commit International Crimes, 11 Chi.- J. Int’l L. 693, 696 (2011).